# Richmond

## Maxie Lee Blakey v. Commonwealth of Virginia.

May 1, 1944.

Record No. 2818.

Present, All the Justices.

The opinion states the case.

*R. B. Stephenson,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *Edwin B. Jones, Assistant Attorney General,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

Maxie Lee Blakey, by this writ of error, seeks to reverse a judgment entered on a verdict sentencing him to thirty days' confinement in jail for operating an automobile while intoxicated.

The six assignments of error stated in the petition present three questions: (1) Whether the evidence is sufficient to sustain the verdict; (2) whether the court committed reversible error in permitting certain evidence to be introduced; and (3) whether the jurors were properly drawn, summoned and selected.

About 11:15 p. m. on May 29, 1943, J. B. Hinkle and his twin sisters were riding in a taxicab east on route 60 from Covington to the home of Frank McBee, which is on the

north side of the highway opposite the Good Inn Tearoom. Before the taxicab reached its destination, its occupants saw the lights of a car following them. As the taxicab turned around at the entrance to the tearoom, the car in the rear stopped on the south side of the highway 124 feet from the entrance. As this car stopped, its horn began to blow and its lights went out. Hinkle, after discharging his passengers, passed the parked car *en route* to Covington. He saw that it contained only one occupant, who was sitting under the steering wheel. The horn was still blowing. The two girls went across the highway to McBee's residence. One remained on the outside of the house watching the parked car. The other went inside and called McBee. The three then returned to within 75 feet of the parked car. The only occupant was slumped forward over the steering wheel with the horn still blowing. The horn continued to blow until two officers arrived approximately twenty minutes later. The officers opened the car doors, found defendant in a drunken stupor sitting in the driver's seat slumped over the steering wheel with his head resting on the horn button. When the officers raised defendant's head, the horn immediately stopped blowing. Defendant was shoved over to the right side on the front seat. One of the officers got into defendant's car with him and drove to the jail in Covington. Defendant was so drunk that he was unable to walk up the steps to the jail without assistance. The odor of whiskey was strong on his breath.

The evidence for the Commonwealth is not contradicted. There are some discrepancies in the testimony of the witnesses as to just when the lights on defendant's car were turned off and as to the interval between the time defendant stopped and the arrival of the officers. No one was seen to leave the car. Defendant could not have parked his car, continued to blow his horn in the manner in which he was blowing it, and, in the interval, drunk enough intoxicating liquor to produce the condition he was in when the officers found him. The jury returned the only verdict justified by the evidence.

Officer S. O. Walton, over defendant's objection, was permitted to state that he found in the car an official card showing that the car was registered in the defendant's name with the Virginia Motor Vehicle Commissioner, and that the license numbers on the car were the same as those on the card.

Defendant based his objection on the ground that the testimony was hearsay. In one sense, the evidence may be hearsay, but the officer was describing an object he found in the car or on the defendant's person at the time he was arrested. The testimony was admissible. However, it was immaterial, as the ownership of the car is not one of the essential elements of the statutory crime with which defendant was charged.

Cecil Carter, deputy sheriff, testified, in part, as follows:

"Q. Had you known Blakey for sometime?

"A. Yes, sir.

"Q. *Had you seen him when he was sober and also when he was intoxicated?*

"A. *Yes, sir.*

"Q. On this occasion when he was brought in by Mr. Walton, I wish you would state whether he was drunk or sober?

"A. He was drunk.

"Q. No question about that? Did you take him to his cell?

"A. Yes, sir.

"Q. What was his condition when you took him to his cell?

"A. Well, I took—I had to hold him by the arm. I had to half way hold him when I took him up to the top floor to keep him from falling and hurting himself."

No objection was made to any of this testimony at the time. Later, in chambers, a motion was made to declare a mistrial on the ground that the question and answer italicized were highly prejudicial. This motion was overruled. Then defendant moved to strike the question and answer. The court, in overruling this motion, said: "I think it is

best; I am not saying anything about it, for it will then leave an impression upon the minds of the jury. I am going to overrule the motion."

The Attorney General concedes that the question and answer "were inopportune and unnecessary." If so, the court should have sustained defendant's motion to strike, even if such ruling would have left "an impression upon the minds of the jury." It was for defendant, and not the court, to decide whether or not he desired to so emphasize inadmissible evidence. But, even if we regard the evidence as inadmissible, the whole record shows that the Commonwealth did not attempt to prove the reputation or habits of defendant. Several other witnesses testified, and it is not denied, that the defendant was highly intoxicated when the officers found him and when he arrived at the jail in the custody of Officer Walton. At most, the admission of this evidence was harmless error.

When the case was called for trial on July 22, 1943, defendant moved to discharge the jurors then present; and to require the clerk to place the names of all jurors, who had been regularly drawn and summoned to try felony and civil cases, in a box, and to draw therefrom a panel of seven to try this defendant. This motion was overruled and the defendant excepted.

The facts on which the motion is based are that, before the convening of the July term of the Circuit Court of Alleghany county on July 15, a venire of 20 persons for the trial of felonies was regularly drawn and summoned pursuant to the provisions of Code of 1919, sec. 4895, as amended, and a venire of 9 jurors for the trial of civil cases was regularly drawn and summoned pursuant to the provisions of Code of 1919, sec. 5992, as amended. Two of these 29 prospective jurors were excused because of physical infirmities.

When the docket was called on July 15, it was ascertained that no jury for the trial of misdemeanors would be needed until July 21. Confronted with this situation, the trial judge determined that only 17 jurors were needed to try all civil and misdemeanor cases set for trial at that term. It appears

that the 27 men summoned were not personally known to the judge. However, he was informed that several of them were employees of the C. & O. Railway and others were farmers living some distance from the court house. He thereupon discharged for the term all of the employees of the C. & O. Railway and all farmers who lived in the most remote sections of the county, and ordered the remaining 17 prospective jurors to return on July 21. On this date from the list of 17 a panel of 7 was selected to try another misdemeanor case. These 7 were excused until a later day in the term and the other 10 were excused for the day but ordered to return on July 22, the day the present case was set for tiral. Several of the 10 had been summoned on the *venire facias* for the trial of felonies and the others had been summoned for the trial of civil cases.

Defendant does not attack the qualification of any one of the 10 jurors who were present pursuant to their summonses and the orders of the court. He concedes that persons summoned for jury service under Code, sections 4895 and 5992, are expressly authorized to serve as jurors in the trial of misdemeanants, but he contends that the full panel must be selected either from the list of 20 persons summoned for the trial of felonies or the 9 persons summoned for the trial of civil cases. This contention is untenable.

A similar contention was made in *Rudd* v. *Commonwealth*, 132 Va. 783, 793, 111 S. E. 270. The facts were that Rudd was charged with a misdemeanor. Before his case was called for trial at the same term, the judge had ordered a *venire facias* to be issued summoning 13 additional persons to complete the panel for the trial of another defendant charged with a felony. The panel of 7 selected for the trial of Rudd was composed of the persons summoned on the first and second *venire facias*. In the opinion rejecting the contention of the defendant, it was said: "By the express terms of the statute, if any felony case required the issuance of the second *venire facias* in order to secure a jury for its trial as therein provided, the court had the authority conferred upon

it of awarding the second *venire facias*, in which case, also by the express terms of the statute, the jurors so summoned thereby might be used for the trial of all misdemeanor cases."

Defendant further contends that the trial judge had no right to discharge any prospective juror properly drawn and summoned except for cause, such as sickness, physical disability, etc. This contention is made in the teeth of the express provision of section 5998 of the Code of 1919, which provides that "Any court shall have power to discharge persons summoned as jurors therein, or to dispense with their attendance an any day of its sitting." If the *nisi prius* courts were not clothed with this power, the conduct of business affairs, both public and private, would be seriously handicapped, and every business man would seek, by every possible means, to avoid the responsibility and inconvenience of jury service. (For the classes of citizens already exempt, see Code of 1919, sec. 5985). It is the common practice of trial judges to exercise this authority of excusing persons on the list and summoned for jury service, when to compel such persons to attend would disrupt unduly the conduct of their businesses. It is well known that judges are reluctant to exercise this power and only do so when undue hardship would be imposed upon the person seeking to be excused, or when a greater number are in attendance than are needed to dispatch the business of the court.

The trial judge stated his reasons for exercising this power in the present case. The employees of the C. & O. Railway were excused and discharged for the term at the request of the superintendent of the C. & O., who had previously informed the judge that these employees were engaged in essential war work and requested that they be discharged from service as jurors as soon as possible. The farmers living in remote sections of the county were excused and discharged for the term because their attendance upon the court would consume more gasoline than the attendance of those living nearer the court house.

Mr. Justice Holt, speaking for the court in *Ballard* v. *Commonwealth*, 156 Va. 980, 994, 997, 159 S. E. 222, dealing with the question, said:

"Error is assigned because the court refused to quash the venires. There were two of them. On May 1, 1930, and prior to the May term of the Circuit Court of Nansemond county, a *venire facias* issued for 'the trial of Henry Brinkley, *et als.*, who stands charged with a felony.' We do not understand that any complaint was made of what was then done.

"This jury so summoned was competent to try all felonies and misdemeanors which might be tried at said term. Afterwards and during that term the trial judge excused a number of these original veniremen, some because they lived near the scene of the homicide and others at their request and for reasons which he deemed adequate. In this way the original venire was reduced to ten. It became evident that there would not be 'a sufficient number of jurors to constitute a panel free from exception,' and on June 4th he selected 'from the names on the list' fifteen additional veniremen, and directed that a *venire facias* issue summoning them that there might be 'twenty free from exception.' * * *

"The right of trial judges to excuse jurors in proper cases has been so long recognized and so long exercised that this construction of the statute, if it were a matter of doubt, is settled by usage."

Code, sec. 5992, expressly authorizes a jury to try misdemeanants to be selected from the jurors in attendance, as was done in this case. The pertinent provision reads: "In the event it shall become necesary to have a jury for the trial of civil or *misdemeanor cases* at any term of a court for which nò such jury has been drawn and summoned as above provided for, *and there be not then present any other regularly summoned jurors from whom such a jury may be selected, the court may, by an order entered of record, require a jury to be drawn*," etc.

The larger question involved is whether the exclusion or discharge of a qualified juror constitutes reversible error

when another competent and qualified juror is selected in the stead of one so excluded and discharged.

Judge Lomax, speaking for the court in the *Clore's Case,* 8 Gratt. (49 Va.) 606, said: "And again if the exclusion of the venireman upon the Commonwealth's challenge be a matter of exception and a ground of error on the part of the accused, how can the supposed wrong that the error has inflicted upon him be repaired? It is only upon reversal of the judgment to award a new *venire facias*; not that he may have the excluded venireman empaneled on his jury, but that he may again be tried by twelve qualified jurors; in other words that he may have another trial, such precisely in all respects, as that fair and impartial trial before a jury free from exception, that he has already had. Even if we could suppose that the law entitles him in any sense to an election of his jurors out of the panel of the venire, so that the Judge ought not arbitrarily to deprive him of it, yet if he has enjoyed the benefit of the great object of all trials, his wrong can at most amount only to *damnum absque injuria.* We are strongly disposed to think that the exclusion of a venireman upon the Commonwealth's challenge, as stated in this record, ought not to have been allowed as a matter of exception, or to be entertained as error."

This principle was ignored in *Montague* v. *Commonwealth,* 10 Gratt. (51 Va.) 767, in which no reference was made to the *Clore's Case, supra.* It was held that the rejection of a qualified and competent juror without legal cause was reversible error. However, the same question was again presented to the court in *Fishburne* v. *Commonwealth,* 103 Va. 1023, 50 S. E. 443. Judge Keith, who delivered the opinion, after a review of a number of cases, expressly reversed the holding in *Montague* v. *Commonwealth,* and quoted, with approval, the reasons given by Judge Lomax in the *Clore's Case.*

The principle announced in the *Fishburne Case, supra,* has been consistently followed by this court since 1905. Defendant contends that the case of *Wessells* v. *Commonwealth,* 164 Va. 664, 180 S. E. 419, overrules the *Fishburne Case.*

The majority opinion cited the *Fishburne Case* with approval and declared that the facts were distinguishable.

The judgment of the trial court is affirmed.

*Affirmed.*