# Richmond

## GRACE ARCHER AND JAMES JOHNSON v. D. CARLETON MAYES, JUDGE OF THE CIRCUIT COURT OF AMELIA COUNTY; S. L. FARRAR, JR., CLERK OF THE CIRCUIT COURT OF AMELIA COUNTY; JOHN L. SMITH, JAMES E. FORD AND GRAHAM W. THOMPSON, JURY COMMISSIONERS OF THE CIRCUIT COURT OF AMELIA COUNTY.

March 5, 1973.

Record No. 8110.

Present, All the Justices.

*John C. Lowe; F. Guthrie Gordon, III (Lowe and Gordon,* on brief), for appellants.

*Vann H. Lefcoe, Assistant Attorney General; J. Segar Gravatt (Andrew P. Miller, Attorney General,* on brief), for appellees.

I'Anson, J., delivered the opinion of the court.

This controversy originated as a class action in the United States District Court for the Eastern District of Virginia for a declaration of the invalidity of certain Virginia jury selection statutes, for an injunction against racial and sexual discrimination in jury selection, and for an affirmative revision of the Amelia County jury list. Eventually, the questions before the Federal court were held in abeyance to permit the parties to seek their remedy in the State court.

Complainants, Grace Archer and James Johnson, then commenced the present proceeding for declaratory judgments asking the court below to declare: (1) that §§ 8-178 and 8-182 of the 1950 Code, as amended, 1957 Repl.Vol., 1972 Cum.Supp., which deals with the rights of women in relation to jury service, are unconstitutional as an invalid sex discrimination in violation of the Constitution of Virginia and the Fourteenth Amendment to the Constitution of the United States; (2) that Code § 8-181, as amended, 1957 Repl.Vol., which prescribes the oath to be taken by the jury commissioners, is unconstitutional in that it fails to insure that a cross-section of the community will be considered for jury selection; and (3) that Code §§ 8-183 and 8-184, as amended, 1957 Repl.Vol., which provide for the safekeeping of the lists of jurors, are unconstitutional in that they permit the court to deny citizens access to official documents in violation of Virginia law and the Fourteenth Amendment to the Constitution of the United States.

Appellants did not allege racial discrimination in the jury selection process in this proceeding, nor did they ask for an injunction against racial and sexual discrimination in jury selection and for revision of the Amelia County jury list, which they sought in the Federal court.

Respondents, D. Carleton Mayes, Judge of the Fourth Judicial Circuit of Virginia; S. L. Farrar, Jr., Clerk of the Circuit Court of Amelia County; and John L. Smith, James E. Ford and Graham W. Thompson, currently the jury commissioners of the county, filed their answers to the bills for declaratory judgments, and attached thereto a copy of Judge Mayes' instructions to the jury commissioners in Amelia County.

The cases were consolidated by agreement and heard as one case on the following stipulation of facts:

Grace Archer and James Johnson are citizens of Amelia County and are qualified to serve as jurors in that county; they desire to examine the master jury list of the county for the sole purpose of ascertaining whether "jury procedures have been carried out according to law"; and they are desirous of serving as jurors in the county.

The respondents are those officials in Amelia County "responsible for the selection and administration" of jurors in the county; the complainants have not been chosen as jurors; and the respondents have not allowed the complainants to see and examine the master jury list of the county.

The trial judge, in a comprehensive written opinion, held that the statutes under attack are not unconstitutional on their face, and dismissed the complainants' bills. We granted complainants a writ of error.

## I.

The 1971 amendments to Code §§ 8-178(30) and 8-182 permit any woman who has been notified that her name has been selected by the jury commissioners for jury duty to claim an exemption by a reply in the manner prescribed in Code § 8-182, "that she has legal custody of and is responsible for a child or children sixteen years of age or younger or a person having a mental or physical impairment requiring continuous care during normal court hours and that she does not desire her name placed upon the jury list . . . ." Code § 8-178(30).

Complainants say that the statutory exemption discriminates against men and in favor of women in that men who care for children sixteen years of age or younger or persons having mental or physical impairments are not permitted to claim exemption from jury duty. Thus they argue that the statutes are discriminatory on the basis of sex, and are in violation of the Equal Protection Clause of

the Fourteenth Amendment and Article I, Section 11, of the Constitution of Virginia.

The only case to come before us attacking the constitutional validity of Code §§ 8-178 and 8-182 is *Near* v. *Commonwealth*, 202 Va. 20, 29, 116 S.E.2d 85, 91 (1960), *cert. denied* 365 U.S. 873, 81 S.Ct. 907, 5 L.Ed.2d 862 (1961), *cert. denied* 369 U.S. 862, 82 S.Ct. 951, 8 L.Ed.2d 19 (1962). The statutes at the time *Near* was decided permitted any woman to claim exemption from jury service by responding in writing to a communication from the jury commissioners that she did not desire her name to be placed on the jury list. We upheld the statute on the ground that the exemption given to women was a statutory declaration of public policy permitting them to avoid court trials involving indecent and humiliating elements.

Less than a year after we decided *Near*, the Supreme Court of the United States, in *Hoyt* v. *Florida*, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961), sustained the validity of a Florida statute according all women an absolute exemption from jury service unless they expressly waive that privilege. There the Court said:

> ". . . We cannot say that it is constitutionally impermissible for a State, acting in pursuit of the general welfare, to conclude that a woman should be relieved from the civic duty of jury service unless she herself determines that such service is consistent with her own special responsibilities.
>
> . . . .
>
> ". . . It is true, of course, that Florida could have limited the exemption, as some other States have done, only to women who have family responsibilities. But we cannot regard it as irrational for a state legislature to consider preferable a broad exemption, whether born of the State's historic public policy or of a determination that it would not be administratively feasible to decide in each individual instance whether the family responsibilities of a prospective female juror were serious enough to warrant an exemption." 368 U.S. at 62-63, 82 S.Ct. at 162-64, 7 L.Ed.2d at 122-23. (Footnotes omitted.)

Complainants rely on *Reed* v. *Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), as authority for what they say is the "growing recognition" that the Fourteenth Amendment prohibits discrimination on the basis of sex. There an Idaho statute gave men a prefer-

ence over women in administering decedents' estates. In striking down this statute the United States Supreme Court said:

"In applying . . . [the Equal Protection Clause], this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways . . . . [Citing cases.] The Equal Protection Clause of that Amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920). *The question presented by this case, then, is whether a difference in the sex of competing applicants for letters of administration bears a rational relationship to a state objective that is sought to be advanced* by the operation of §§ 15-312 and 15-314." (Emphasis added.) 404 U.S. at 75-76, 92 S.Ct. at 253-54, 30 L.Ed.2d at 229.

Appellants also say that the Supreme Court, in *Alexander* v. *Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972), has already begun to express reservations about its holding in *Hoyt, supra.* We do not agree. The court found it unnecessary to pass on the question of the constitutionality of the Louisiana statute concerning women jurors. Only one Justice was of opinion that the issue should be decided and that *Hoyt* should no longer be followed.

The constitutionality of Code §§ 8-178(30) and 8-182 depends upon whether the classification constitutes such invidious discrimination against men that it is patently arbitrary and unreasonable and bears no rational relationship to the State objective that is sought to be advanced by the statutes. If there is any reasonable basis for the classification, the alleged statutory discrimination must be upheld. *Reed* v. *Reed, supra,* 404 U.S. at 76, 92 S.Ct. at 254, 30 L.Ed.2d at 229; *McGowan* v. *Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961); *Leighton* v. *Goodman,* 311 F.Supp. 1181 (S.D.N.Y. 1970).

It is perfectly manifest that the objective of the statutes is to provide proper care for those who cannot care for themselves by re-

moving an obligation which might be imposed on their custodians to be absent for hours or days at a time for jury duty. The Commonwealth has a substantial interest in the care of children and persons with mental or physical impairments, and the statutes reflect a reasonable recognition by the legislature that women are usually the persons who perform such service. The classification bears a rational relationship to the objective sought to be advanced. It may be reasonable to require a man to prove that he should be relieved of jury duty,[1] where it would be impractical to decide in each instance the extent of a woman's home responsibilities. It is true that women have been emancipated from restrictions and protections of the past, and, in most respects, they now enjoy the same legal status as men, but women are still regarded as the center of home and family life and they are charged with certain responsibilities in the care of the home and children. Moreover, the statutes do not prevent any woman from serving on a jury; they merely permit women who come within the statutory classification to claim an exemption from jury duty. The fact that some women may claim their exemption does not prevent the commissioners from obtaining a cross-section of the population of a county suitable in character and intelligence for jury duty.

Appellants also say that the statutory exemption runs afoul of Article I, Section 11, of the 1971 Constitution of Virginia prohibiting "any governmental discrimination upon the basis of . . . sex." This provision prohibits invidious, arbitrary discrimination upon the basis of sex. It is no broader than the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. Where a statute is based on a reasonable classification that bears a rational relationship to the objective of the State, as here, there is no impermissible discrimination under the Constitution of Virginia.

We hold that Code §§ 8-178 and 8-182 of the 1950 Code, as amended, do not violate the rights of the complainants under either the equal protection clause of the Fourteenth Amendment to the Constitution of the United States or Article I, Section 11, of the 1971 Constitution of Virginia, and that they are not unconstitutional on their face.

1. See Code § 8-195, 1957 Repl.Vol.; *Blakey* v. *Commonwealth*, 182 Va. 614, 621, 29 S.E.2d 863, 865 (1944).

## II.

Complainants allege that Code § 8-181 is unconstitutional in that it fails to insure that a cross-section of the community will be considered for jury duty. They argue, in the alternative, that the jury commissioners' oath as prescribed in the statute either *requires* or *permits* the commissioners to select only those persons known to them personally.

We do not agree with complainants' argument. The pertinent parts of the jury commissioners' oath, as codified in § 8-181, provides:

> ". . . [I]n selecting persons to be drawn as jurors, I will select none but persons whom *I believe* to be of *good repute* for intelligence and honesty . . . ." (Emphasis added.)

There is no language in the oath which states that the commissioners are required or permitted to select only those persons who are personally known to them. The duty of the commissioners is to select only those persons whom they "believe to be of good repute for intelligence and honesty." This belief may come from any number of reliable sources in the community where prospective jurors reside.

We said in *Bailey* v. *Commonwealth*, 193 Va. 814, 825, 71 S.E.2d 368, 373 (1952), that it is not necessary for jury commissioners to have social relations with those persons whom they select for jury service.

The directive that the commissioners select only those persons of good repute for intelligence and honesty is not an arbitrary or irrational command. In upholding an Alabama statute providing that jurors be selected who are "generally reputed to be honest and intelligent and . . . esteemed in the community for their integrity, good character and sound judgment," the Supreme Court of the United States, in *Carter* v. *Jury Commission of Greene County*, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970), said:

> ". . . The States remain free to confine the selection to citizens, to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment and fair character." 396 U.S. at 332, 90 S.Ct. at 525, 24 L.Ed.2d at 559.

There is nothing in the statute which prevents the commissioners from selecting jurors who represent a cross-section of the population of the community suitable in intelligence and honesty for that duty. To the contrary, the commissioners are required, in the performance of their duty, to select prospective jurors who represent a cross-section of the community. The oath prescribed by Code § 8-181 requires a commissioner in making his selections to "endeavor to promote only the impartial administration of justice." If this command is obeyed as the solemn oath dictates, it insures selection of a jury truly representative of the community, and constitutional requirements are satisfied.

We hold that the jury selection process under Code § 8-181 is not unconstitutional on its face.

### III.

Appellants assert that the jury list is a "State document" and that all citizens should be permitted to see and examine it if they are interested. We do not agree.

Under the provisions of Code § 8-184, the commissioners, after making up a list of prospective jurors, "shall cause all the names thereon to be fairly written, each on a separate paper or ballot, . . . and shall deposit the ballots with the list in a secure box prepared for that purpose. Such box shall be locked and safely kept by the clerk of such court and opened only by the direction of the judge thereof, as hereinafter provided." The language "hereinafter provided" obviously refers to Code § 8-185, et seq., establishing the the procedure for drawing names for the trial venire.

In Eccles v. Commonwealth, 212 Va. 679, 187 S.E.2d 207 (1972), the Commonwealth confessed error to the action of the trial court in refusing a criminal defendant access to the jury list to determine if there had been a compliance with required selection procedures. There we held that the defendant had alleged good cause to examine the jury list and the trial court erred in not granting defendant that right.

There is nothing in the statute which deprives the judge of the court in the exercise of his discretion, where good cause is shown, to permit an examination of the jury list. But it cannot be inferred that the jury list shall be opened for inspection to members of the bar or private citizens without assigning good and sufficient reasons therefor. The proper administration of justice requires that the jury list be kept secret until the jurors are drawn for service, unless good

cause be shown. The jury list is in no sense a public record to be exposed to the general public. Exposure of the list to the public could lead to tampering with and harassment of potential jurors and seriously affect their impartiality and the proper administration of justice. Even when good cause is shown, the inspection of the list shall be permitted only under the "watchful eye" of the court, and copying or photostating the list is not to be permitted. See *Jackson* v. *State*, 285 Ala. 564, 567-68, 234 So.2d 579, 582 (1970); *State* v. *Aspara*, 113 La. 940, 37 So. 883 (1904).

Appellants have not alleged that they have been systematically excluded from the jury list. *Cf. Carter* v. *Jury Commission of Greene County, supra*, 369 U.S. at 322, 90 S.Ct. at 519, 24 L.Ed.2d at 553. Under the agreed statement of facts they merely say that they are eligible for jury service; that they desire to serve on the jury; and that they have not been called. Appellants are in no different position than every eligible person in the county who desires to serve as a juror but has not been called. Thus they have not shown good cause to see and examine the jury list.

■ Appellants contend for the first time on this appeal that under the provisions of the Virginia Freedom of Information Act (§§ 2.1-340 through 2.1-346, Code of 1950, 1966 Repl.Vol., 1972 Cum.Supp.) the general public is given the right to inspect the jury list. Ordinarily we would not notice this contention since it was not raised in the court below. Rule 5:7; *Clarendon House, Inc.* v. *Helfert*, 213 Va. 28, 189 S.E.2d 331 (1972). But because it raises a question of considerable importance we will consider it.

■ The jury list is not an "official record" within the intent and meaning of the provisions of the Freedom of Information Act. Section 2.1-342(a) provides that "Except as otherwise specifically provided by law, all official records shall be open to inspection and copying by any citizens of this State having a personal or legal interest in specific records . . . ." Under the provisions of Code §§ 8-183 and 8-184 the jury list is a secret document which is not open to public inspection, and it cannot be examined except for good cause shown. Thus the right of access to official records allowed under the Freedom of Information Act does not include jury lists.

We hold that Code §§ 8-183 and 8-184 are not unconstitutional on their face.

The order of the trial court is

*Affirmed.*