FLORENCE MITCHELL RAND *v.*
ROBERT C. RAND

[No. 147, September Term, 1976.]

*Decided June 30, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Elbert R. Shore, Jr.,* with whom were *John T. Bell, Frank S. Cornelius* and *Bell & Cornelius* on the brief, for appellant.

*Allen J. Katz,* with whom was *George W. Young, Jr., P.A.* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

We granted certiorari in this case to decide whether, in view of the provisions of Maryland Code (1957, 1970 Repl. Vol., 1976 Supp.) Art. 72A, § 1 and Article 46 of the Maryland Declaration of Rights, the Court of Special Appeals applied correct principles of law in allocating child support payments between the child's parents.[1]

Art. 72A, § 1 provides, insofar as pertinent, that "The father and mother are the joint natural guardians of their child under eighteen years of age and are jointly and severally charged with its support, care, nurture, welfare and education. They shall have equal powers and duties . . . ." Article 46 of the Declaration of Rights, better known as the Equal Rights Amendment (E.R.A.), provides that "Equality of rights under the law shall not be abridged or denied because of sex."

Florence and Robert Rand were divorced in 1971. The chancellor awarded Florence custody of the minor child Virginia, alimony of $75 monthly, and child support of $250 monthly. *See Rand v. Rand,* 13 Md. App. 574, 284 A. 2d 271 (1971). In 1975 Florence sought an increase in child support to finance Virginia's college education;[2] Robert cross-filed for a reduction or termination of alimony. The chancellor

1. *See* Rand v. Rand, 33 Md. App. 527, 365 A. 2d 586 (1976).

2. Because the age of majority was 21 at entry of the original decree, Florence was entitled to receive support payments for Virginia until she reached age 21, even though the age of majority was lowered to age 18 in the interim. *See* Monticello v. Monticello, 271 Md. 168, 315 A. 2d 520, *cert. denied,* 419 U. S. 880 (1974).

adopted the master's report, which found the required monthly child support to be $520, increased Robert's child support contribution to $480 monthly, and terminated his alimony payments. Florence appealed. She contended that the chancellor erred in not ordering Robert to pay a greater sum toward Virginia's support.

The Court of Special Appeals noted that Florence, a teacher, had a yearly income exceeding $16,000, of which $300 remained monthly after her properly allowable personal expenses were paid and that Robert, a mathematician, had a yearly income exceeding $27,000, of which $500 remained monthly after payment of his proper expenses. It did not disturb the finding below that $520 monthly was a reasonable amount for the maintenance and support of Virginia. It did, however, find that the allocation of $480 (92%) of that amount to Robert was clearly erroneous. Based on the net monthly income available to the parties after personal expenses, the court calculated that Robert was liable for only ⁵/₈ths of $520 or $325 monthly and implicitly, that Florence was responsible for the remainder ($195 monthly). In so concluding, it relied on Art. 72A, § 1, the case of *Melson v. Melson,* 151 Md. 196, 134 A. 136 (1926), and Article 46 of the Maryland Declaration of Rights. The court said that "Florence's contention that as the mother she is but contingently obligated to contribute to the support of her minor child is unsound under the circumstances of this case." 33 Md. App. at 539, 365 A. 2d at 593.[3]

Florence contends that she is chargeable with Virginia's support only to the extent that Robert is financially incapable of providing it. It is her apparent contention that before she has any responsibility to contribute to Virginia's support, Robert is obligated to pay child support of at least $500 monthly, the total remaining to him after payment of his personal expenses.

At common law, the father was primarily liable for the support of his minor children. *See Seltzer v. Seltzer,* 251 Md.

---

[3]. It may be inferred from the Court's discussion in *Melson* that a mother can sometimes be expected to contribute to the support of her minor child.

44, 246 A. 2d 264 (1968); *Sause v. Sause*, 194 Md. 76, 69 A. 2d 811 (1949); *Kriedo v. Kriedo*, 159 Md. 229, 150 A. 720 (1930); *Alvey v. Hartwig*, 106 Md. 254, 67 A. 132 (1907); *Maryland Drydock Co. v. Parker*, 37 F. Supp. 717 (D. Md. 1941). This responsibility arose from the father's corresponding right to his children's earnings and services, a right which the mother did not share. *See Greenwood v. Greenwood*, 28 Md. 369 (1868).

Notwithstanding the enactment of Art. 72A, § 1,[4] our cases involving child support continued to apply the common law rule that the father is primarily liable for the support of his minor children, and that it is his financial worth which must be considered. *E.g., Seltzer v. Seltzer, supra; Wagshal v. Wagshal*, 249 Md. 143, 238 A. 2d 903 (1968); *Chalkley v. Chalkley*, 240 Md. 743, 215 A. 2d 807 (1966); *Woodall v. Woodall*, 16 Md. App. 17, 293 A. 2d 839 (1972). While we indicated that a court may take the mother's earnings into account, *see Groner v. Davis*, 260 Md. 471, 272 A. 2d 621 (1971); *Melson v. Melson, supra*, we never had occasion to consider whether Art. 72A, § 1 required that it be done.

The Equal Rights Amendment was adopted by the people of Maryland in November, 1972. It is the impact of this constitutional amendment on Art. 72A, § 1, and on the common law obligation of the father to support his minor children, to which we now turn our attention.

To ascertain the mandate of the constitutional amendment, we look first to the "natural and ordinary signification" of its language. *Balto. Gas & Elect. Co. v. Board*, 278 Md. 26, 358 A. 2d 241 (1976). If that language is clear and unambiguous, we need not look elsewhere. *Harden v. Mass Transit Adm.*, 277 Md. 399, 354 A. 2d 817 (1976); *Md.-Nat'l Cap. P. & P. v. Rockville*, 272 Md. 550, 325 A. 2d 748 (1974). The words of the E.R.A. are clear and

---

4. As originally enacted by ch. 561 of the Acts of 1929, Art. 72A, § 1 provided that "The father and mother are the joint natural guardians of their minor child and are equally charged with its care, nurture, welfare and education. They shall have equal powers and duties ...." When amended by ch. 678 of the Acts of 1951, it extended the responsibility "for support of a minor child to both parents."

unambiguous; they say without equivocation that "Equality of rights under the law shall not be abridged or denied because of sex." This language mandating equality of rights can only mean that sex is not a factor. See Brown, Emerson, Falk, and Freedman, *The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women,* 80 Yale L.J. 871 (1971).

Cases from other state jurisdictions interpreting the breadth and meaning of their equal rights amendments are instructive in ascertaining the reach of Maryland's E.R.A. The Supreme Court of Washington interpreted its Equal Rights Amendment,[5] a provision almost identical to Maryland's, in *Darrin v. Gould,* 85 Wash. 2d 859, 540 P. 2d 882 (1975). The court there said that by ratifying "the broad, sweeping, mandatory language" of the amendment, the citizens "intended to do more than repeat what was already contained in the otherwise governing constitutional provisions, federal and state, by which discrimination based on sex was permissible under the rational relationship and strict scrutiny tests." 85 Wash. 2d at 871, 540 P. 2d at 889. The court, therefore, did not consider whether the sex-based classification at issue — concerning eligibility to participate in high school sports — satisfied the rational relationship or strict scrutiny test. It found that the "overriding compelling state interest" had been determined by the people of the state to be that "Equality of rights and responsibility under the law shall not be denied or abridged on account of sex." The rule which forbade qualified high school girls from playing on teams with boys was invalidated under that state's E.R.A.

The Pennsylvania Supreme Court has taken a similar position in interpreting that state's E.R.A.[6] Noting that the clear purpose of the constitutional provision was to end discriminatory treatment on account of sex, the court struck

---

5. "Equality of rights and responsibility under the law shall not be denied or abridged on account of sex." Wash. Const., art. 31, § 1.

6. "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." Pa. Const., art. 1, § 28.

down differential sentencing procedures for women and men. *Commonwealth v. Butler*, 458 Pa. 289, 328 A. 2d 851 (1974). It stated that "sex may no longer be accepted as an exclusive classifying tool." 458 Pa. at 296, 328 A. 2d at 855. In another case, it reversed an order whereby a husband was required to post security for costs in a pending divorce under a statute burdening men only. It said:

> "The thrust of the Equal Rights Amendment is to insure equality of rights under the law and to eliminate sex as a basis for distinction. The sex of citizens of this Commonwealth is no longer a permissible factor in the determination of their legal rights and legal responsibilities. The law will not impose different benefits or different burdens upon the members of a society based on the fact that they may be man or woman." *Henderson v. Henderson*, 458 Pa. 97, 101, 327 A. 2d 60, 62 (1974) (*per curiam*).

Colorado exempts from the operation of its E.R.A.[7] only those cases in which classification of the sexes is based on physiological differences. Holding that a rape statute punishing only male offenders was not unconstitutional, the court reasoned that:

> "This amendment prohibits unequal treatment based exclusively on the circumstance of sex, social stereotypes connected with gender, and culturally induced dissimilarities. However, it does not prohibit differential treatment among the sexes when, as here, that treatment is reasonably and genuinely based on physical characteristics unique to just one sex. ... In such a case, the sexes are not similarly situated and thus, equal treatment is not required." *People v. Salinas*, Colo., 551 P. 2d 703, 706 (1976).

---

7. "Equality of rights under the law shall not be denied or abridged by the state of Colorado or any of its political subdivisions on account of sex." Colo. Const., art. 2, § 29.

514

The Illinois Supreme Court has applied a slightly less stringent test to sex-based classifications. In a case relying on the constitutional amendment [8] to challenge the validity of sex-based differences in the jurisdiction of the juvenile court (under 17 years for boys; under 18 years for girls), the court found "inescapable the conclusion that [the amendment] ... requires us to hold that a classification based on sex is a 'suspect classification' which, to be held valid, must withstand 'strict judicial scrutiny.'" *People v. Ellis*, 57 Ill. 2d 127, 132-33, 311 N.E.2d 98, 101 (1974). It held that that sex-based difference could not withstand strict scrutiny. *See also Phelps v. Bing*, 58 Ill. 2d 32, 316 N.E.2d 775 (1974). Unlike the interpretations placed on their respective constitutional provisions by the highest courts of Washington, Pennsylvania, and Colorado, the test to be applied under the Illinois' constitutional amendment would allow a compelling state interest to override a sexually discriminatory practice.

In Texas, the Court of Civil Appeals expressly rejected an absolute interpretation of that state's E.R.A.[9] *Mercer v. Bd. of Trust., North Forest I.S.D.*, 538 S.W.2d 201 (Tex. Civ. App. 1976). In a suit by a male student challenging the validity of a public school hair-length regulation applicable only to boys, the court examined the approach of several other states in construing their constitutional amendments. It expressed unwillingness to agree with an interpretation "admit[ting] of no exceptions to its prohibition of sex discrimination." 538 S.W.2d at 206. The court there held that "strictest judicial scrutiny" was the appropriate test under the E.R.A., with a sex-based classification falling "unless the party defending it can show that it is required by (1) physical characteristics, (2) other constitutionally protected rights such as the right of privacy, or (3) other 'compelling reasons.'" *Id.*

---

8. "The equal protection of the laws shall not be denied or abridged on account of sex by the State or its units of local government and school districts." Ill. Const., art. 1, § 18.

9. "Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin. This amendment is self-operative." Tex. Const., art. 1, § 3a.

In *Archer and Johnson v. Mayes,* 213 Va. 633, 194 S.E.2d 707 (1973), the Supreme Court of Virginia was confronted with a challenge to the state's jury selection process whereby a woman could claim exemption from service by stating she was responsible for a child or other dependent person. It was there claimed that such a procedure violated the constitutional provision prohibiting "any governmental discrimination upon the basis of . . . sex . . . ." Va. Const., art. 1, sec. 11. The court held that the provision "is no broader than the equal protection clause of the Fourteenth Amendment to the Constitution of the United States," requiring that there only be a reasonable classification which bears a rational relationship to a state objective. 213 Va. 638, 194 S.E.2d at 711. It rejected the constitutional challenge, stating that "[i]t may be reasonable to require a man to prove that he should be relieved of jury duty, where it would be impractical to decide in each instance the extent of a woman's home responsibilities." 213 Va. at 638, 194 S.E.2d at 710.

The Louisiana Supreme Court has also adopted a permissive test for sex discrimination. That state's constitutional provision provides, in pertinent part, that "No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations." La. Const., art. I, sec. 3. By its terms it permits reasonable discrimination based on sex. Thus, the court has upheld classifications making only a husband liable for criminal neglect or non-support, *State v. Barton,* 315 So. 2d 289 (La. 1975), and granting only to wives the right to receive alimony pendente lite, *Williams v. Williams,* 331 So. 2d 438 (La. 1976).

It is thus clear that the tests employed under constitutional provisions dealing with equality of rights range from absolute to permissive. Like the Supreme Court of Washington, however, we believe that the "broad, sweeping, mandatory language" of the amendment is cogent evidence that the people of Maryland are fully committed to equal rights for men and women. The adoption of the E.R.A.

in this state was intended to, and did, drastically alter traditional views of the validity of sex-based classifications.

Applying the mandate of the E.R.A. to the case before us, we hold that the parental obligation for child support is not primarily an obligation of the father but is one shared by both parents. The clear import of the language of Art. 72A, § 1, standing alone, seemingly compels that result. Any doubt remaining from the past failure of the courts to so interpret that statutory provision is removed by the gloss impressed upon it by the E.R.A. The common law rule is a vestige of the past; it cannot be reconciled with our commitment to equality of the sexes. Sex of the parent in matters of child support cannot be a factor in allocating this responsibility. Child support awards must be made on a sexless basis.

Courts in our sister states have reached this same conclusion. In *Conway v. Dana*, 456 Pa. 536, 540, 318 A. 2d 324, 326 (1974), the court, citing the E.R.A., held that the best interests of the child were not furthered "by indulging in a fiction that the father is necessarily the best provider and that the mother is incapable, because of her sex, of offering a contribution to the fulfillment of this aspect of the parental obligation." In Washington, the court, holding that the income available to both parents must be taken into consideration, stated that the E.R.A. "firmly requires equal responsibilities as well [as equal rights]." *Smith v. Smith*, 13 Wash. App. 381, 385, 534 P. 2d 1033, 1036 (1975). *See also Cooper v. Cooper*, 513 S.W.2d 229 (Tex. Civ. App. 1974).

Recognizing that it was contrary to the traditional view, an Illinois appellate court nevertheless relied on a statute providing that child support is the joint and several obligation of both parents to hold that fathers are no longer primarily responsible for the support of their children. *Hursh v. Hursh*, 26 Ill. App. 3d 947, 326 N.E.2d 95 (1975); *Plant v. Plant*, 20 Ill. App. 3d 5, 312 N.E.2d 847 (1974). *See also Birge v. Simpson*, 280 So. 2d 482 (Fla. Dist. Ct. App. 1973); *In re Marriage of Carney*, 206 N.W.2d 107 (Iowa 1973); *Price v. Price*, 272 So. 2d 392 (La. App. 1972). See Annot., 69

A.L.R.2d 203, § 11 (1960), for a collection of earlier cases supporting this view. In Wyoming, without citation to constitutional provisions or statutes, the court held that both parents have responsibility for support of children. *Grosz v. Grosz*, 506 P. 2d 46 (Wyo. 1973). See also Annot., 1 A.L.R.3d 324, § 7 (1965), and Annot., 1 A.L.R.3d 382, § 7 (1965).

We, therefore, fully agree with the Court of Special Appeals that the parents must share the responsibility for parental support in accordance with their respective financial resources. In so holding, we do not undertake to mandate any specific formula by which the chancellor is to calculate the amount of support to be charged against each parent. Whether it is appropriate to utilize a "net income after personal expenses" test, as the Court of Special Appeals did in this case, or a gross income, or a total capital resources test, or some other measure of assessing financial resources, is a matter to be determined by the chancellor in view of the circumstances of each individual case. While we do not disagree with the allocation made by the Court of Special Appeals in this case, we nevertheless shall remand the matter so that the chancellor, having the benefit of the principles of law enunciated in this opinion, may in the first instance determine, in the exercise of his discretion, the parental support obligation of each parent.

> *Judgment of the Court of Special Appeals vacated; case remanded to that Court with directions that it remand the matter to the Circuit Court for Montgomery County for the entry of a decree in conformity with the views expressed in this opinion; costs to be paid by the appellant.*