Lewis E. **LEFTWICH**, Plaintiff,

v.

Joseph J. **BEVILACQUA** and R.
**Michael Marsh**, Defendants.

**Civ. A. No. 83–0855(R).**

United States District Court,
W.D. Virginia,
Roanoke Division.

May 12, 1986.

Charles R. Allen, Jr., Roanoke, Va., for plaintiff.

Frank W. Pedrotty, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

### I.

This case comes before the Court on defendants' motion for summary judgment. Plaintiff Lewis E. Leftwich has alleged violations of 42 U.S.C. §§ 1983 and 1985 pursuant to the Fourteenth Amendment of the United States Constitution, as well as a claim under the Virginia Constitution. Leftwich maintains that his due process rights were violated when he was discharged while an employee of the state of Virginia. Defendants Joseph J. Bevilacqua and R. Michael Marsh have moved for summary judgment on numerous grounds. Among other things, defendants contend that Leftwich was given adequate process, that the Eleventh Amendment bars a damage claim against defendants in their official capacities, that Dr. Marsh is entitled to good faith immunity, and that Leftwich has not stated a claim under the Virginia Constitution. After a careful review of the entire record, the Court concludes that Leftwich was not denied due process under either the United States or Virginia Constitutions.[1]

### II.

The pertinent facts of this case must be summarized briefly in the light most favorable to the plaintiff. Defendant R. Michael Marsh, Ph.D., has been the Director of the Catawba Hospital of the Department of Mental Health and Retardation (the "Hospital") since 1978. Plaintiff Lewis E. Leftwich was employed at the Hospital as an Executive Housekeeper. The Hospital is located in Catawba, Virginia, and is a state facility for the mentally ill. On October 4, 1982, a Housekeeping employee named Donna Underwood submitted a signed statement to Catawba Hospital officials,[2] alleging that the plaintiff had sexually harassed her on September 13, 1982.[3]

Dr. Marsh then initiated an administrative investigation on October 7, 1982. He conferred with plaintiff on that day and informed him of Ms. Underwood's complaint. He also contacted Ms. Nancy Barton, Director of the Social Department Work at the Hospital, and directed her to conduct a "confidential administrative investigation." Marsh Aff. ¶¶ 7 and 8. Ms. Barton's "Investigation Report" was concluded on November 3, 1982. See Exhibit 3. After reviewing the entire report, which contained rather detailed interviews of eighteen (18) hospital employees, Dr. Marsh determined that plaintiff had to be fired. Marsh Aff. ¶¶ 9–11.

When Dr. Marsh met with plaintiff on November 4, 1982, to inform him of the decision, plaintiff offered no explanation or evidence on his behalf.[4] Dr. Marsh then issued plaintiff a "Written Notice of Termination," which stated that plaintiff was being terminated for "threatening subordinate employees by inappropriate sexual behavior." Exhibit 4.

Plaintiff then exercised his statutory right as a Virginia employee to file a grievance. See Va. Code § 2.1–114.5:1 (Supp. 1982). The termination was upheld at the first three grievance steps. According to

---

1. Consequently, the Court need not reach a conclusion on the other bases for defendants' summary judgment motion.

2. Ms. Underwood originally complained to Mr. Leonard C. Herr, Employee Relations Director at the Hospital. Dr. Marsh actually received the written complaint on October 5. See Exhibit 1.

3. Ms. Underwood stated that while she was working late one night, plaintiff "closed the [basement] door, pulled her on his lap and rubbed [her] breasts and groin." According to Underwood, plaintiff told her that if she "did what he wanted," she wouldn't have to worry about her job. Exhibit 1. Ms. Underwood later stated that prior to fondling her, plaintiff asked her if she had "had [her] titties pinched today." Exhibit 3, Statement of Ms. Underwood.

4. Dr. Marsh testified that he "was prepared to listen to any explanations or additional evidence" that plaintiff might have presented on November 4, 1982. Plaintiff contradicts this evidence and contends that he "advised Dr. Marsh [at the November 4 meeting] that he did not do those things." Leftwich Aff. ¶ 4. This minor factual dispute does not affect the legal issues or the Court's ruling in this case.

plaintiff, the evidence at these initial grievance steps focused solely on the alleged incident between plaintiff and Ms. Underwood on September 13, 1982. *See* Leftwich Aff. ¶ 5.

Plaintiff's attorney requested and was given a complete copy of Ms. Barton's Investigation Report on January 20, 1983, after the conclusion of the first three grievance steps. *See* Exhibit 5. The fourth and final grievance step, which consists of a complete "hearing before an impartial panel," *see* Va.Code § 2.1–114.5:1(D)(4), was conducted at the Sheraton Inn in Salem, Virginia on March 30, 1983. Plaintiff was ably represented by counsel at that hearing and was permitted to "call upon appropriate witnesses ... and present evidence" as Virginia law requires. *See id;* Berry Aff. ¶ 9. At the hearing, the testimony of other employees who alleged in the Investigative Report to have also been sexually harassed by plaintiff was admitted into evidence, over plaintiff's objection.

At the close of the hearing, the panel requested copies of certain documents, including the Investigative Report,[5] to consider during its deliberations. Linkous Aff. ¶ 11. By a 2–1 vote, the panel announced its decision upholding the termination on April 11, 1983.[6] Plaintiff has now appealed the panel's decision to this Court.

### III.

Plaintiff's due process claim consists of two basic arguments. First, plaintiff argues that there were several deficiencies in his pretermination hearing. Second, plaintiff argues that the post-termination grievance panel violated due process by hearing evidence of alleged incidents between plaintiff and other employees without giving plaintiff adequate notice. Neither of these claims is meritorious.

### A.

■ There is no question that plaintiff had a valid property interest in his contin-

---

**5.** Ms. Barton's report consisted of her summary remarks gleaned from interviews with eighteen (18) present and former employees at the Hospital, including the plaintiff. The report is basically unbiased, and includes interviews with several employees who could not imagine plaintiff attempting these alleged atrocities. *See, e.g.,* Statement of Ms. Kathy Smith (plaintiff's secretary for four years doesn't view plaintiff as "the type of person" to make sexual advances towards women); Statement of Ms. Juanita Huffman (plaintiff "is jokeful and friendly but never 'overly friendly' ").

Despite these statements in support of plaintiff, there were even more statements providing graphic accounts of plaintiff's alleged shenanigans at the Hospital. Indeed, a copious inspection of the report leads one to conclude that either plaintiff possessed a libido unparalleled since Casanova de Seingelt or else the Housekeeping Department united to form one of the most massive conspiracies ever recorded in the Roanoke Valley. *See e.g.,* Statement of Ms. Ruth Hutchinson (former hospital seamstress alleging to have seen plaintiff "reach up and touch [Ms. Debbie Dudley] in the groin area" while the latter was standing on a ladder); Statement of Ms. Wanda Alley (alleging that on different occasions plaintiff asked her if she "wanted to screw" or had "a bra on"); Statement of Ms. Debbie Dudley (alleging that plaintiff once approached her and rubbed her breast

while stating, "If you do what I want, you won't have to worry about anything"); Statement of Ms. Sue Belcher (alleging that plaintiff once told her to unbutton her "yellow alligator shirt" or he would "rip the buttons off"); Statement of Ms. Pam Looney (allegation by worker that plaintiff once approached her while working and began to massage her back and then "move ... toward her chest" before she told him she "had to go"); Statement of Mr. Tom Turner (observing peculiar acts by plaintiff such as entering unoccupied hospital buildings for 30–60 minutes with Ms. Juanita Huffman).

Even Mr. Burgess Bailey, the hospital painter who describes himself as a "minister for the Church of God," reported that plaintiff once asked him to " 'paint Dolly Parton's breast' on one section of the office." Statement of Mr. Burgess Bailey. *See also id.* (Bailey once finding plaintiff and Ms. Gloria Johnston embracing in a "soiled linen closet").

**6.** In accordance with the Va. Code § 2.1–114.-5:1(D)(4), the three-member panel consisted of "one member appointed by the grievant, one member appointed by the agency head and a third member selected by the first two." *See id.* Ms. Kaye Berry was selected by Dr. Marsh; Mr. Stephen Hampton (who cast the dissenting vote) was selected by plaintiff; and Mr. Bill Linkous was selected by mutual agreement between Ms. Berry and Mr. Hampton. Berry Aff. ¶¶ 3–4; Linkous Aff. ¶ 3.

ued employment as a state employee. *See Board of Regents of State College v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Plaintiff was therefore entitled to due process upon his termination. In 1985, the Supreme Court redefined due process for the Fourth Circuit and held that a public tenured employee is entitled to a pretermination as well as a post-termination hearing. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (pretermination hearing required). *Cf. Detweiler v. Virginia Department of Rehabilitative Services,* 705 F.2d 557 (4th Cir.1983) (no pretermination hearing required, based on earlier Supreme Court cases).

Plaintiff was not entitled to an elaborate pretermination hearing. He was entitled only to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill,* 470 U.S. at ——, 105 S.Ct. at 1495. All three requirements were met in this case. Dr. Marsh notified plaintiff of the charges pending against him both prior to and after Ms. Barton's investigation. Marsh Aff. ¶¶ 4, 10–12. Plaintiff was also given the opportunity to present his side of the story. Leftwich Aff. ¶ 4. Plaintiff maintains that the second requirement of *Loudermill* was not met because Dr. Marsh did not, prior to plaintiff's dismissal, explain in sordid detail every allegation of sexual harassment contained in Ms. Barton's Investigative Report or provide plaintiff with a copy of the report. However, *Loudermill* merely requires "*an explanation* of the employer's evidence." 470 U.S. at ——, 105 S.Ct. at 1495 (emphasis added). Dr. Marsh advised plaintiff that he had considered the claims of both Ms. Underwood and plaintiff, that an Investigation Report had been prepared by Ms. Barton, and that on the basis of all the evidence, he believed plaintiff should be terminated. Marsh Aff. ¶¶ 10–12. Plaintiff also saw a copy of Ms. Underwood's sworn allegation and knew on October 7, 1982 that an investigation was underway. *See* Leftwich Dep.

at 21–22. Certainly this was an adequate "explanation of the employer's evidence." *Loudermill* does not require employers to provide detailed photocopies of all unfavorable evidence to an employee prior to his termination. Neither does *Loudermill* require employers to act as government prosecutors and disclose every piece of relevant evidence to the employee whether or not he requests it. *Cf. Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Other lower courts since *Loudermill* have upheld less informative pretermination hearings than this. *See Buschi v. Kirven,* 775 F.2d 1240 (4th Cir.1985) (employer complied with *Loudermill* where he offered individual "pretermination interviews" with several employees but refused to conduct one interview with an attorney representing the entire group). Although Dr. Marsh's actions were prior to *Loudermill,* he nonetheless complied with its three requirements for a pretermination hearing. *See generally Patkus v. Sargamon-Cass Consortium,* 769 F.2d 1251 (7th Cir.1985); *Kaufman v. McCrory Stores Division of McCrory Corp.,* 613 F.Supp. 1179 (M.D.Pa. 1985). Therefore, plaintiff's pretermination hearing was adequate under the Due Process Clause.

### B.

Plaintiff also alleges that certain improprieties in the post-termination grievance procedure denied him due process. The procedures to which plaintiff is entitled are delineated by the Due Process Clause, not Virginia regulations or statutes. *See Arnett v. Kennedy,* 416 U.S. 134, 185, 94 S.Ct. 1633, 1659–60, 40 L.Ed.2d 15 (White, J., concurring in part and dissenting in part) (at least six Justices believe the Constitution, not state legislatures, defines "procedural due process"). However, the Virginia grievance procedure for non-probationary public employees has previously been upheld against due process attacks by the Fourth Circuit. *See Detweiler v. Commonwealth of Virginia Department of Rehabilitation Services,* 705 F.2d 557 (4th

Cir.1983) (Virginia's grievance procedure satisfied employee's right to procedural due process). Therefore, if defendants complied with the established Virginia procedures in this case, it is axiomatic that plaintiff was not denied due process.

Virginia law requires four basic elements in a post-termination grievance hearing. These requirements include: (1) written notice of the termination with reasons therefor; (2) a hearing before an impartial three-member panel; (3) an opportunity to present, examine, and cross-examine witnesses; and (4) a panel decision that adheres to "law and written policies." Va. Code § 2.1–114.5:1(D) (Supp.1982); *Detweiler,* 705 F.2d at 559–60.

The second and third prerequisites were clearly met in this case. There is no substantive evidence indicating that standard procedures were not followed in selecting the panel. *Compare* Linkous Aff. ¶¶ 3–7 and Berry Aff. ¶¶ 3–5 *with* Leftwich Dep. at 23–25. Furthermore, plaintiff admits he called approximately ten (10) witnesses at the hearing. Leftwich Dep. at 25. Plaintiff's complaint instead focuses on the alleged inadequate notice and the panel's failure to adhere to "law and written policies" by considering Ms. Barton's voluminous report.

■ Plaintiff's contentions are not well taken. Plaintiff has cited no case for the proposition that evidence of prior similar acts by an employee cannot be admitted at a grievance hearing consistent with the Fourteenth Amendment. In fact, quite the contrary is probably true. First, the additional allegations were clearly relevant and, had the matter been tried in Federal court, would have probably been admitted under Federal Rule of Evidence 404(b). *See generally United States v. Bice-Bay,* 701 F.2d 1086 (4th Cir.1983). Second, even if the evidence *were* inadmissible in Federal court, its admission in a grievance hearing does not violate due process unless notions

of fundamental fairness were violated. *See Ward v. Johnson,* 690 F.2d 1098 (4th Cir.1982); *Shrader v. Riddle,* 401 F.Supp. 1345 (W.D.Va.1975). Plaintiff has the burden of showing that the admission of the extraneous evidence denied him minimal due process. *Morris v. City of Danville,* 744 F.2d 1041 (4th Cir.1984). This he is unable to do.

■ Most importantly, plaintiff simply cannot prove that the panel relied solely on the Investigation Report and incidents *other than* the "Ms. Underwood incident" in reaching its decision. The panel's decision was to uphold "the action of the agency, as set forth in documents presented at panel hearing." Exhibit 2. The reason for the decision was stated as follows:

> Terminated employee engaged in sexual harassment which unreasonably interfered with an employees (sic) work performance and creating an intimidating, hostile, or offensive work environment.

*Id.* In sum, there is no indication that without the additional evidence of sexual harassment, the panel would not have upheld Dr. Marsh's decision. In such instances, a panel's decision cannot be said to violate "law and policy" under either Virginia law or the Due Process Clause.

■ Plaintiff was also given proper notice of the charges against him. Plaintiff's Written Notice of Termination listed "9/13/82" as the Date of Offense, and described the Nature of Offense as "Threatening subordinate *employees* by inappropriate sexual behavior." Exhibit 4 (emphasis added). Plaintiff contends that this notice only apprised him of a pending complaint by one employee involving one specific occasion and that improper notice was given for all additional evidence admitted at his hearing. This argument is meritless. Assuming, *arguendo,* that a public employee is entitled to be notified in advance of all evidence the employer presents against him at a grievance hearing,[7] plain-

---

7. As indicated *supra, Loudermill* clearly entitles plaintiff to some type of notice of the charges pending against him. However, the Court expresses no opinion as to whether or not a public

employer is required as a matter of due process to turn over in advance photocopies of all evidence it intends to use against an employee at the grievance hearing. Because Dr. Marsh re-

tiff was clearly given such notice. The Termination Notice listed the offense as "threatening subordinate *employees*" and thereby put any reasonable person on notice that more than one incident might be involved. Plaintiff cannot negate this clear language by complaining that only "9/13/82" was listed as the "Date of Offense."

As if the Termination Notice weren't enough, plaintiff's attorney was then sent a copy of the Investigation Report on January 20, 1983, approximately nine (9) weeks before the hearing. *See* Exhibit 5; Marsh Aff. ¶ 14. Since Dr. Marsh had told plaintiff when he fired him that the Report was a factor in his decision, plaintiff was clearly put on notice of the additional allegations of improper sexual behavior when his attorney received the report. It was then in plaintiff's best interests to prepare to defend each allegation at the hearing. He failed to do so at his own peril, and such failure does not create a constitutional violation on the part of the defendants.

## IV.

The Supreme Court of Virginia has never held that the Due Process Clause of the Virginia Constitution gives broader rights than the Due Process Clause of the United States Constitution. On the contrary, that Court has held that the two equal protection clauses give identical rights. *Archer v. Mayes*, 213 Va. 633, 194 S.E.2d 707 (1973). Therefore, because plaintiff has not stated a claim under the federal Constitution, his claim under the Virginia Constitution must also be denied.

Defendant's Motion for Summary Judgment shall be granted in an order to be entered this date.

linquished a copy of the disputed evidence in                 this case, that issue need not be decided.