**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-6607

DARRELL WASHINGTON,

Petitioner - Appellee,

versus

LARRY W. JARVIS,

Respondent - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Gerald Bruce Lee, District Judge.  (CA-02-1798-AM)

Argued:  November 30, 2004                  Decided:  June 1, 2005

Before WILKINS, Chief Judge, SHEDD, Circuit Judge, and Norman K. MOON, United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.  Judge Shedd wrote a separate opinion concurring in part and dissenting in part.

**ARGUED:** Virginia Bidwell Theisen, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellant.  Justin S. Antonipillai, ARNOLD & PORTER, L.L.P., Washington, D.C., for Appellee.  **ON BRIEF:** Jerry W. Kilgore, Attorney General, Richmond, Virginia, for Appellant.  Robyn M. Holtzman, Kathryn E. Taylor, ARNOLD & PORTER, L.L.P., Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

This matter is an appeal from the district court's grant of a writ of habeas corpus based on a violation of the Double Jeopardy Clause. We agree with the district court that the Supreme Court of Virginia, in upholding Appellee's conviction, unreasonably applied clearly established federal law and made an unreasonable determination of the facts. We also agree that no proper basis existed for the trial court's declaration of a mistrial. Therefore, we affirm.

I.

At issue in this appeal is the propriety of a habeas grant setting aside the conviction of Appellee Darrell Washington ("Washington"). In August 1999, Washington was indicted in Virginia state court for aggravated robbery. In Washington's original trial on December 15, 1999, the court came to a point at the beginning of a scheduled two-day trial in which it had empaneled and sworn a jury of twelve, but one of the jurors was to be excused by 5:30 P.M. on the first day and another was to be excused for the entire second day. Recognizing that these circumstances would likely require the use of alternate jurors, the court sought to select alternates pursuant to its authority under

2

Section 8.01-360 of the Virginia Code.[1] Although potential alternates remained in the jury pool of twenty, only two remained whom counsel had not already struck. Virginia procedure, however, requires that at least three veniremen be available for each alternate.[2] The court attempted to cure this problem by proposing an unorthodox selection procedure, but both sides objected and no solution was availing. The result was the following colloquy among the court, Washington's counsel (Ms. Wolfe), and the Commonwealth's Attorney (Mr. Hudgins):

| | |
|---|---|
| The Court: | That's a mistrial. |
| Ms. Wolfe: | Your Honor, and I'm going to say this— |
| The Court: | Now you are going to have jeopardy. |
| Ms. Wolfe: | We have jeopardy, but the Court— |
| The Court: | The Commonwealth won't agree to the cure. |
| Mr. Hudgins: | There wasn't a jury sworn. |
| The Court: | No, sir. |
| Ms. Wolfe: | The jurors were sworn. |
| The Court: | I tried to get this case tried and tried to get it done, but we are going to fight over this. And you want your statutory right. You want your statutory right. We do not have sufficient jurors to have a replacement for the juror sworn. That's a mistrial. |
| Ms. Wolfe: | Thank you, Your Honor. |

---

[1]Section 8.01-360 provides in part: "Whenever in the opinion of the court the trial of any criminal or civil case is likely to be a protracted one, the court may direct the selection of additional jurors who shall be drawn from the same source, in the same manner and at the same time as the regular jurors." Va. Code. Ann. § 8.01-360 (Michie 2000).

[2]Section 8.01-360 provides in part: "When one additional juror is desired, there shall be drawn three veniremen, and the plaintiff and defendant in a civil case or the Commonwealth and accused in a criminal case shall each be allowed one peremptory challenge." Va. Code. Ann. § 8.01-360 (Michie 2000).

```
Mr. Hudgins:    I'm going to ask, Your Honor—could we
                place it on the docket for another day?
The Court:      Well, of course that's what we are going
                to do.
Ms. Wolfe:      Well, I think there's really an argument
                about—
The Court:      Now she's going to claim that jeopardy
                attaches.
Ms. Wolfe:      Well, it did attach because the jurors
                were sworn.
                We will get the transcript—
The Court:      Now she is going to move to dismiss on
                double jeopardy grounds.
                You're objecting to my attempted cure to
                get a jury in the box, and you have a
                right to do that, and you have statutory
                authority for it.
Ms. Wolfe:      And we can set a date.
The Court:      Bring the jurors in, both sides, lobby
                and here.
```

J.A. 54-56. Commenting that "[w]e can't comply with the Code of Virginia and give both the defense and Commonwealth their rights under the statute," the trial court determined that "the [legislative] statement compels a declaring of a mistrial." J.A. 57. Accordingly, the trial court excused the jury panel and prospective jurors and scheduled a new trial for a later date. In justifying this act, the court explained that it would be impossible to finish the trial within one day, and on the second scheduled day the court would be unable to have twelve jurors. J.A. 58-59. The court did not mention any other basis for the mistrial. It also did not mention considering any other alternatives to solving the empaneling problem, such as continuing the existing trial to a date when all jurors would be available.

4

At the close of the proceedings, Washington's counsel requested that a transcript of the trial be prepared "fairly quickly," which the trial court acknowledged by stating "[t]hank you." J.A. 60-61.

Several months later, on March 6, 2000, a second trial was held before a new judge. Prior to the selection of the jury in this second trial, Washington's counsel moved for a dismissal on double jeopardy grounds, which the second judge denied. In doing so, the second judge reaffirmed the first judge's finding that manifest necessity existed to declare a mistrial. J.A. 93. Subsequently, Washington was tried and convicted of robbery and the use of a firearm in the commission of a robbery.

Washington appealed his conviction in the second trial to Virginia's intermediate appeals court, the Virginia Court of Appeals, arguing in part that the second trial violated the Double Jeopardy Clause of the Fifth Amendment. In an opinion dated March 27, 2001, the Virginia Court of Appeals held that the first Virginia trial judge failed to consider possible alternatives to a mistrial, and therefore, "because no manifest necessity required the trial judge to declare a mistrial, the double jeopardy prohibition bars the retrial of appellant." Washington v. Commonwealth, 543 S.E.2d 638, 646 (Va. Ct. App. 2001). The court also expressly rejected the Commonwealth's claim that Washington had not objected to the declaration of a mistrial and that therefore his appeal was procedurally barred. Id. at 640 n.1.

5

Accordingly, the Virginia Court of Appeals reversed and dismissed Washington's convictions.  Id. at 646.

After this reversal by the Virginia Court of Appeals, the Commonwealth then appealed to the Supreme Court of Virginia. After initially refusing to allow the Commonwealth to appeal, the Supreme Court of Virginia ultimately decided to hear the case.[3]  At this appeal, the Commonwealth argued that Washington had implicitly consented to the first Virginia trial judge's declaration of a mistrial by not explicitly objecting to it.  The Supreme Court of Virginia accepted this argument and determined that no double jeopardy violation had occurred.  Accordingly, in an order dated March 1, 2002, the Supreme Court of Virginia reversed the Court of Appeals judgment and reinstated Washington's convictions.  Because of its dispositive finding that Washington had consented to the mistrial, the Supreme Court of Virginia did not address whether manifest necessity would have required a mistrial notwithstanding Washington's consent.

Upon this judgment by the Supreme Court of Virginia, Washington filed a petition for rehearing, which the Supreme Court

---

[3]The Supreme Court of Virginia first denied the appeal in an order dated July 25, 2001. Commonwealth v. Washington, R. No. 010913 (Va. July 25, 2001).  The Commonwealth then filed a petition for rehearing, which the Supreme Court of Virginia also denied in an order dated September 14, 2001. Commonwealth v. Washington, R. No. 010913 (Va. Sept. 14, 2001).  One week later, however, in an apparent sua sponte order, the Supreme Court of Virginia changed its position and granted the rehearing.  Commonwealth v. Washington, R. No. 010913 (Va. Sept. 21, 2001).

of Virginia denied on April 19, 2002.  <u>Commonwealth v. Washington</u>, R. No. 010913 (Va. Apr. 19, 2002).  Washington then filed a state habeas petition with the Supreme Court of Virginia, which was dismissed on November 13, 2002.  <u>Washington v. Warden</u>, R. No. 010913 (Va. Nov. 13, 2002).  Having exhausted his state habeas remedies, Washington petitioned the Federal District Court for the Eastern District of Virginia for federal habeas corpus relief.  In the petition, Washington argued in part that the Supreme Court of Virginia failed to recognize that Washington preserved his double jeopardy rights for appeal by implicitly objecting to the first Virginia trial judge's declaration of a mistrial.  The district court granted his petition, finding the following determinations of the Supreme Court of Virginia to be "unreasonable": (1) its bright-line test in which failure to object, by itself, qualifies as consent to a mistrial, and (2) its factual determination that Washington did not object to the court's <u>sua sponte</u> declaration of a mistrial.  The Commonwealth now appeals.

II.

Before considering the merits of the case, a threshold question must be addressed.  Washington argues that this Fourth Circuit Court of Appeals panel is not properly constituted because it includes a district court judge, who sits by designation of the Chief Judge.  A federal statute, 28 U.S.C. § 292, empowers a

7

federal court of appeals chief judge to designate district judges within the circuit for temporary service on the court of appeals. Washington contends that this statute is an unconstitutional violation of the Appointments Clause, which provides specific procedures for the filling of Article III judgeships. He argues that the President alone has the authority to appoint judges to service on a court of appeals, whether such appointment is permanent or temporary.

The Appointments Clause provides in part that the President shall have the power to nominate "Judges of the supreme Court, and all other Officers of the United States." U.S. Const. art. II, § 2, cl. 2 (emphasis added). Article III provides that the judicial power "shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1 (emphasis added). No other provision of the Constitution provides further instruction regarding the inferior courts.[4] In this sense, the Constitution makes a deliberate judicial division only between the Supreme Court and other Article III courts; it does not distinguish between levels within the inferior federal courts. Because the

---

[4]Washington also finds support in the Recess Appointments Clause, U.S. Const. art. II, § 2, cl. 3, which concerns temporary appointments. This clause has no application here, as it exists for the limited purpose of allowing the President temporarily to fill offices "during the Recess of the Senate," when it would otherwise be impossible to nominate and appoint such officers.

Constitution does not contemplate any particular judicial divisions within the inferior courts, the structure of that system has been left to congressional discretion. Congress is free to determine not only which inferior courts shall exist, but also what the jurisdiction and hierarchy of those courts shall be, and what powers and duties the judges of those courts shall have. Accordingly, while the Appointments Clause does govern the procedure for filling Article III judgeships, Congress nevertheless may define the responsibilities of those judgeships.

The history of the U.S. Court of Appeals supports this view. As Washington himself recognizes, Congress has a long history of using its discretion to modify the duties and powers of the inferior courts. In particular, Congress historically has granted district judges the power to sit on panels of the U.S. Court of Appeals. Indeed, the original Court of Appeals, created along with the District Court by the Judiciary Act of 1789, was composed of one district court judge and two members of the Supreme Court riding circuit. See 13 Charles A. Wright et al., Federal Practice And Procedure § 3503-3504. Later, when Congress passed the Evarts Act of 1891, the Court of Appeals became staffed by permanent appeals judges, but even then district judges made regular appearances on these panels. Although Washington argues that the Evarts Act dramatically altered the role of district judges in the inferior courts by making district and circuit judgeships distinct

9

principal offices, the limited academic commentary on this subject suggests just the opposite.  See id.; Diluting Justice on Appeal?: An Examination of the Use of District Court Judges Sitting by Designation on the United States Courts of Appeals, 28 U. Mich. J.L. Ref. 351, 360 (1995) ("From the earliest date . . . district judges were authorized to sit by designation as visiting judges on the new courts of appeals.").  In this sense, history confirms that Congress always has had the discretion to modify the powers and duties of judges within the inferior courts.

Exercising this discretion, Congress has chosen to enact the designation statute that Washington challenges, 28 U.S.C. § 292.  The statute specifically modifies the duties of district judges to allow for their temporary service on panels of the Court of Appeals.  Such a change is entirely consistent with Congress's past modifications to the inferior courts.  In fact, this alteration is far less sweeping than the changes imposed upon the Court of Appeals by the Evarts Act of 1891, whose constitutionality Washington has not questioned.  Therefore, we see no reason why 28 U.S.C. § 292, too, should not pass constitutional muster.

Washington argues that allowing designation would subvert the President's appointment power by granting district judges greater powers than those the President intended to grant them.  Yet the President surely is aware when nominating district judges that § 292 empowers them to serve temporarily on the Court of Appeals.

10

If this matter plays a significant role in the President's choice of appointment, then presumably the President takes it into account when deciding to appoint a district judge in the first place.

For these reasons, Washington's arguments are unavailing, and it is proper for a district judge to sit on this panel by the designation of the Chief Judge. This panel therefore may hear the merits of the appeal.

## III.

We review the district court's conclusions of law, including its ultimate determination that Appellee has established a double jeopardy violation entitling him to habeas relief, de novo. See Allen v. Lee, 366 F.3d 319, 323 (4th Cir. 2004). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, if a state court already has adjudicated a claim against the defendant, a federal court may grant habeas relief only if the state court's adjudication was contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 403-13 (2000); Richmond v. Polk, 375 F.3d 309, 321 (4th Cir. 2004). In all other circumstances, the AEDPA standard requires deference to a state court's decision on the merits. See id.

11

The unreasonable application clause from § 2254 is highly deferential to state courts. Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly," Woodford v. Visciotti, 537 U.S. 19, 24–25 (2002) (citation omitted), or even if it finds that the state court's actions to be "clear error." Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Nevertheless, this standard does allow the issuance of a writ for state court actions that are "objectively unreasonable." Id. In defining what is unreasonable, the United States Supreme Court has suggested that every application of law has a certain range of reasonableness, but it also has recognized that ultimately, "[t]he term 'unreasonable' is a common term in the legal world and, accordingly, federal judges are familiar with its meaning." Yarborough v. Alvarado, 541 U.S. 652, __, 124 S. Ct. 2140, 2149 (2004) (citing Williams v. Taylor, 529 U.S. 362, 410–11 (2000)).

The Commonwealth argues that the district court erred in three respects. Specifically, it contends that the district court erred: (1) in failing to recognize that the Supreme Court of Virginia applied Virginia's contemporaneous objection rule; (2) in finding that the Supreme Court of Virginia's determination that Washington consented was an unreasonable application of clearly established United States Supreme Court law and based on an unreasonable

12

determination of the facts; and (3) in finding that there was no manifest necessity to support the trial court's declaration of a mistrial.  We consider these arguments in turn.

A.

As a threshold matter, we disagree that consideration of the merits of this case is precluded by a Virginia procedural bar. Appellant argues that the Supreme Court of Virginia applied its contemporaneous objection rule, Supreme Court of Virginia Rule 5:25, to bar consideration of the double jeopardy issue.[5]  For at least three reasons, however, the record indicates that no procedural bar was applied.  First, and most obviously, the Supreme Court of Virginia did not give it as a reason for its ruling. Although the court's majority did cite a host of Virginia cases invoking Rule 5:25, its opinion nevertheless came to a substantive conclusion—a result that is inconsistent with the application of a procedural bar.  Specifically, the court determined that "[having consented to the mistrial, the defendant waived his double jeopardy rights."  Commonwealth v. Washington, 559 S.E.2d 636, 639 (Va.

---

[5]Supreme Court of Virginia Rule 5:25 is a state procedural appeal rule whereby a party does not preserve an issue for appeal if he or she fails to offer a contemporaneous objection: "Error will not be sustained to any ruling of the trial court or the commission before which the case was initially tried unless the objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."  Sup. Ct. Va. R. 5:25.

13

2002)(emphasis added). Such a holding would not have been necessary had Rule 5:25 precluded substantive analysis.

Second, based upon the unique manner in which the Supreme Court of Virginia discussed Rule 5:25, we cannot assume that it intended to apply Rule 5:25 implicitly. Significantly, the majority cited a long string of Virginia cases discussing the jurisprudence of Rule 5:25, but it then failed to make any application of these cases to Washington's circumstances. In fact, without further comment, the majority abruptly turned to its substantive conclusions. Commonwealth v. Washington, 559 S.E.2d 636, 639 (Va. 2002). This omission is telling. In the past, when the Supreme Court of Virginia has desired to apply the procedural bar, it has been very clear in doing so. Indeed, this clarity is demonstrated by the very Rule 5:25 cases that the majority cited in its opinion. See Remington v. Commonwealth, 551 S.E.2d 620, 634 (Va. 2001) ("We will not consider the defendant's contentions because they are procedurally defaulted."); Schmidt v. Commonwealth, 547 S.E.2d 186, 194 (Va. 2001), cert. denied, U.S. (2002) ("Because Schmidt failed to object contemporaneously to the admission of this evidence, Schmidt has waived this objection on appeal. Rule 5:25."); Overtone v. Commonwealth, 539 S.E.2d 421, 423 (Va. 2000) ("His failure to make contemporaneous objections at trial precludes consideration of those issues on appeal. Rule 5:25."). For this reason, the fact that the majority decided to

14

cite these very Rule 5:25 cases and then decline to follow their example is significant.  Moreover, it should be noted that in the prior history of this case, the Virginia Court of Appeals also specifically addressed the procedural bar issue in its own opinion.  In deliberate fashion, it explicitly rejected this claim.[6] Washington v. Commonwealth, 543 S.E.2d 638, 640 n.1 (Va. Ct. App. 2001).  If the Supreme Court of Virginia had intended to reject this ruling by the Virginia Court of Appeals, one might expect to see a reference to it in its opinion.  And yet the Supreme Court of Virginia did not even mention the lower court's consideration of a procedural bar.  In this sense, the surrounding circumstances strongly suggest that the majority was not applying a procedural bar.

Third, the Virginia contemporaneous objection rule could not have applied because the record indicates that the actions of Washington's counsel would have satisfied Virginia's requirements for an objection.  Rule 5:25 provides merely that the objection must be "stated with reasonable certainty at the time of the ruling."  Sup. Ct. Va. R. 5:25 (emphasis added).  In addition, the Virginia Code provides that when voicing an objection to the court,

---

[6]The Virginia Court of Appeals rejected the application of its equivalent version of procedural bar rule, Rule 5A:18.  Virginia courts have routinely found that Rule 5A:18 is "virtually identical" to Rule 5:25, Jimenez v. Commonwealth, 402 S.E.2d 678, 680 (Va. 1991), and that "what is said in application of one applies to the other."  Perez v. Commonwealth, 580 S.E.2d 507, 513 n.8 (Va. Ct. App. 2003) (Agee, J., concurring).

15

a party need not make a formal exception, but only put the court on notice of the nature of the objection and the grounds for making it. See Va. Code Ann. § 8.01-384 (Michie 2000) (providing that "it shall be sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objections to the action of the court and his grounds therefor"). Furthermore, it is clear that Rule 5:25 itself exists for practical, rather than formalistic purposes. "This rule exists to protect the trial court from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal, to enable to trial court to rule intelligently, and to avoid unnecessary reversals and mistrials." Fisher v. Commonwealth, 374 S.E.2d 46, 52 (Va. 1988), cert. denied, 490 U.S. 1028 (1989).

Recognizing these standards, the Supreme Court of Virginia itself has refused to exercise Rule 5:25 despite a party's failure to object explicitly when a court has notice of the objection and an opportunity to make a meaningful ruling on it. See Ward v. Insurance Co. of N. Am., 482 S.E.2d 795, 796 n.1 (Va. 1997) (finding that notwithstanding her failure to object, a party's appeal right was preserved because "[t]he record is clear that Ward argued [the issue] to the trial court" and she "was not required to make a formal objection to the trial court's order because the court was aware of her objections"). Cf. Johnson v. Raviotta, 563

16

S.E.2d 727, 732 (Va. 2002) (finding no waiver when a party had argued that the jury should not be allowed to consider certain testimony and the trial court was aware of this objection and could have provided an appropriate instruction to the jury).

In the instant case, it is clear that the arguments of Washington's counsel satisfied these Virginia procedural standards. As discussed more fully in Section III.B.3, infra, the first Virginia trial judge certainly was aware of Washington's counsel's double jeopardy objections before finalizing the mistrial, for he specifically stated during the proceedings, "[n]ow she's going to move to dismiss on double jeopardy grounds." J.A. 55. Under a plain reading of the Virginia procedural statutes and case law concerning contemporaneous objections, therefore, Washington would have satisfied the requirements to preserve the double jeopardy issue for appeal. In this sense, the circumstances further suggest that the Supreme Court of Virginia did not intend to apply Rule 5:25 as a procedural bar.

Rather than using Virginia Supreme Court Rule 5:25 in its traditional sense, it appears that the majority was offering the jurisprudence of Rule 5:25 as analogous case law to support its substantive conclusion that waiver had occurred. Under such reasoning, the circumstances of Washington's objection would not only cast doubt upon whether he had satisfied Virginia's contemporaneous objection rule, but they would also tend to suggest

17

a constitutional waiver of Washington's underlying double jeopardy rights. To be sure, such an argument would erroneously conflate the related but independent concepts of constitutional waiver rules and contemporaneous objection rules. Indeed, the state's contemporaneous objection standard requires far more vigilant action from a party to preserve rights than does the constitutional standard for withholding consent. Whereas the Virginia procedural bar rule will cause a party to lose its appeal rights if it does not state an objection "with reasonable certainty," Sup. Ct. Va. R. 5:25, constitutional waiver rules "indulge every reasonable presumption against waiver" of fundamental rights. See, e.g., Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1942). Regardless of the merit of such reasoning, however, the majority evidently was not applying Rule 5:25 as a procedural bar.

B.

Appellant next argues that the Supreme Court of Virginia's decision was neither an unreasonable application of clearly established federal law nor an unreasonable determination of the facts. As to these claims, which are at the heart of the appeal, we disagree on both counts.

18

1.

Before considering Appellant's claims, we must first address the applicable federal law. The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from being subjected to successive prosecutions for the same offense. It grants a criminal defendant not merely a safeguard from the retrial of unsuccessful prosecutions, but also a right to have his "trial completed by the first jury empaneled to try him." Oregon v. Kennedy, 456 U.S. 667, 673 (1982). In jury trials, this right attaches as soon as the jury has been sworn. Serfass v. United States, 420 U.S. 377, 388 (1975). Two exceptions exist to this general right, however. First, a court may declare a mistrial if the defendant, without intermeddling or goading from the prosecution, freely consents to the mistrial. Kennedy, 456 U.S. at 674. Second, even if a defendant does not consent, a court nevertheless may declare a mistrial if it makes a factual determination that there is "manifest necessity" to do so. United States v. Dinitz, 424 U.S. 600, 606–607 (1976).

The United States Supreme Court has long since adopted a "totality of the circumstances" test for determining whether manifest necessity exists. See United States v. Sanford, 429 U.S. 14, 15–16 (1976) (citing United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824)). In Justice Story's classic formulation, courts "are to exercise a sound discretion on the subject; and it is

19

impossible to define all the circumstances, which would render it proper to interfere.  To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." Perez, 22 U.S. (9 Wheat.) at 580.  More recently, the Supreme Court has emphasized that this manifest necessity standard requires careful deliberation and consideration. "[T]he key word 'necessity' cannot be interpreted literally; instead . . . we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." Arizona v. Washington, 434 U.S. 497, 506 (1978).  In affirming a trial court's finding of manifest necessity, the Arizona Court was careful to note "that the trial judge acted responsibly and deliberately, and accorded careful consideration to respondent's interest in having the trial concluded in a single proceeding," thereby exercising "sound discretion."  Id. at 516 (emphasis added).   Lower courts have acknowledged this clearly established Supreme Court principle by requiring that a trial court consider alternatives to a mistrial.  "In order to determine if the mistrial was required by manifest necessity, the critical inquiry is whether less drastic alternatives were available."  United States v. Shafer, 987 F.2d 1054, 1057 (4th Cir. 1993) (citing Harris v. Young, 607 F.2d 1081, 1085 n.4 (4th Cir. 1979)).  See also United States v. Jorn, 400 U.S. 470 (1971) (holding that it was an abuse of discretion for trial judge to declare a mistrial

20

without considering alternatives to the mistrial). When such alternatives exist, manifest necessity does not exist for a mistrial. See Shafer, 987 F.2d at 1058, Harris, 607 F.2d at 1085-86. A continuance is one viable alternative to declaring a mistrial. See Jorn, 400 U.S. at 487 (citing Perez, 22 U.S. (9 Wheat.) at 580).

The "totality of the circumstances" test applies not only to a court's determination of whether manifest necessity exists, but also to its determination of whether consent has occurred. See Sanford, 429 U.S. at 16 ("The government's right to retry the defendant, after a mistrial, in the face of his double jeopardy claim is generally governed by the test laid down in Perez.") (emphasis added) (citation omitted). Lower court rulings have not deviated from this standard, but rather built upon it. See, e.g., United States v. Goldstein, 479 F.2d 1061, 1067 (2d Cir. 1973), cert. denied, 414 U.S. 873 (1973); United States v. Nichols, 977 F.2d 972, 974 (5th Cir. 1992). Therefore, while it is indeed possible for a court to infer consent based on a defendant's simple silence, it may only do so if the totality of the circumstances justifies such a finding. See Goldstein, 479 F.2d at 1067 ("Consent need not be express, but may be implied from the totality of the circumstances attendant on a declaration of mistrial."); United States v. Gantley, 172 F.3d 422, 428-29 (6th Cir. 1999) (finding that "simple silence" can only be an indication of consent

21

if the totality of the circumstances positively indicated that silence "was tantamount to consent"). Moreover, the Supreme Court's overarching principles regarding consent are also clearly established. While a court need not satisfy itself that the consent was "knowing, intelligent, and voluntary," United States v. Dinitz, 424 U.S. 600, 609 n.11 (1976), it should also "indulge every reasonable presumption against waiver" of fundamental rights. See, e.g., Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1942). Further, if a court has any doubts regarding the status of those rights, it should resolve them "in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion." Downum v. United States, 372 U.S. 734, 738 (1963) (quoting United States v. Watson, 28 F. Cas. 499, 501 (S.D.N.Y. 1868)).

Finally, the Supreme Court has also made clear its standards for effectively voicing objections. In court proceedings, a party need not use any particular language to preserve an objection, provided that the court understands the objection and its basis. Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 174 (1988) (noting that a party can preserve an objection by making "known to the court the action which the party desires the court to take or the party's objection to the action of the court and the grounds therefor") (quoting Fed. R. Civ. P. 46). See also Mickens v.

22

_Taylor_, 535 U.S. 162, 168 (2002); _Holloway v. Arkansas_, 435 U.S. 475, 490 (1978).

Guided by these standards, we may now turn to consider the Supreme Court of Virginia's application of federal law in the instant case.

2.

The first prong of Appellant's claim concerns the Supreme Court of Virginia's application of federal law regarding the Double Jeopardy Clause, which the court employed to determine that waiver had occurred. The Supreme Court of Virginia began its analysis by acknowledging that the Fifth Amendment grants a criminal defendant the right to have his trial completed by a single tribunal. It then explained that a defendant's double jeopardy protections nevertheless may be waived, and that "consent to a mistrial is implied when a defendant had an opportunity to object to a mistrial but failed to do so," citing to _United States v. Buljubasic_, 808 F.2d 1260, 1265–66 (7th Cir. 1987), _Goldstein_, 479 F.2d at 1067, and _United States v. Bascaro_, 742 F.2d 1335, 1365 (11th Cir. 1984) (cited with approval in _Peretz v. United States_, 501 U.S. 923, 936 (1991)). J.A. 176. Next, the court described a number of Virginia cases applying the Virginia contemporaneous objection rule, Rule 5:25, to preclude appeal when a timely objection was not made. Finally, applying these standards to the facts, the court held that

23

Washington had consented to the mistrial because his counsel failed to make "an express objection to the circuit court's declaration of a mistrial." Commonwealth v. Washington, 559 S.E.2d 636, 639 (Va. 2002). After it issued its holding, the court later explained that it was consistent with one of its earlier decisions. In doing so, it noted that Washington's counsel "participated, without objection, in the selection of a new trial date," and that she did not exercise the "specific objections" regarding Double Jeopardy that she had made in the past.

This application of federal law by the Supreme Court of Virginia was unreasonable. While the Supreme Court of Virginia did later refer to other actions of Washington's counsel, its holding focused solely on the bright-line issue of whether Washington's counsel had explicitly objected. Its analysis makes clear that it relied on this single issue, and not the other points it discussed later, in determining that Washington had consented.[7] As discussed

---

[7]Further, even if these two other issues had been a further basis for the court's finding of consent, we still would find that the court's decision was unreasonable. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 413 (2000). Thus, even if the court's reference to these issues is taken to suggest that it was applying the totality of the circumstances standard, the court also must be reasonable in determining what constitutes the totality of the circumstances. Here, even considering these potential other bases for its ruling, the court's "totality" analysis would fail. Neither basis would be relevant to evaluating the totality of the circumstances. First, as discussed in Section III.B.3, infra, any possible participation

24

above, the United States Supreme Court has always required that consent to mistrial must be determined based on a "totality of the circumstances."  It has never adopted the bright-line rule, used here by the Supreme Court of Virginia, that consent is implied when a defendant has an opportunity to object but does not explicitly express an objection.  Further, in focusing on whether Washington's counsel made this express objection, the Supreme Court of Virginia disregarded clearly established Supreme Court law concerning the sufficiency of an objection.  This standard focuses not on the use of express language, but rather upon making "known to the court the action which the party desires the court to take or the party's objection to the action of the court and the grounds therefor." Beech Aircraft, 488 U.S. at 174.  In this sense, the Supreme Court of Virginia unreasonably applied clearly established United States Supreme Court law.

Parenthetically, the Supreme Court of Virginia's bright-line rule regarding consent also is not supported by the federal court of appeals cases cited in its opinion.  These cases are consistent

_____

by Washington's counsel in setting a new trial came after the double jeopardy issue had been raised, rendering the participation irrelevant.  Second, the fact that Washington's counsel had made more "specific objections" earlier in the proceedings has no bearing on the legal sufficiency of the objection at issue.  To be valid, an objection need only put the court on notice of the exception and its legal basis.  Beech Aircraft, 488 U.S. at 174. Thus, even if the Supreme Court of Virginia had justified its ruling on these other bases too, its ruling still would be unreasonable.

25

with the well-settled United States Supreme Court principle that consent must be considered within the totality of the circumstances. Buljubasic qualified the totality of the circumstances principle to emphasize that "[p]arties may give consent in many ways." Buljubasic, 808 F.2d at 1566. As an example, the court stated that consent would be implied if a defendant remained silent after a judge stated, "I think a mistrial would be a good idea, but think this over and let me know if you disagree." Id. It did not, however, conclude that waiver should be inferred any time there is an opportunity for objection and an express objection is not made. Similarly, Goldstein found that a defendant's silence qualified as an indication of continued support for a mistrial when less than two hours before, the defendant had suggested that the jury was deadlocked. Goldstein, 479 F.2d at 1067. The court there went on to emphasize that consent may be implied from "the totality of the circumstances attendant on the declaration of mistrial." Id. More significantly, it also emphatically stated that it would not go so far as to hold that "in the absence of an express objection to discharging the jury, consent is, in effect, to be presumed." Id. at 1067 n.11. Finally, Bascaro found that waiver had occurred when the issue had never been asserted at trial. Bascaro, 742 F.2d at 1365 (citing Grogan v. United States, 394 F.2d 287, 289 (5th Cir. 1967) (noting that double jeopardy assertions need to be "affirmatively raised at

26

some point in the proceedings")).

Each of these cases is in harmony with the United States Supreme Court's well-settled "totality of the circumstances" standard and its longstanding principle that dictates against presuming a defendant's waiver of fundamental rights. More significantly, nothing in any of these cases reasonably can be taken to mean that despite such standards, a failure to make an "express objection" when responding to a judge's mistrial declaration necessarily implies consent. In focusing particularly on the failure of Washington's counsel to make "an express objection," the Supreme Court of Virginia ignored its obligation to consider these fundamental standards. In this sense, its application of federal law was unreasonable.

3.

The second prong of Appellant's claim concerns the Supreme Court of Virginia's factual determinations based on the record. Even if we were to accept that the Supreme Court of Virginia reasonably applied federal law in making its decision, the factual basis that the court used in applying the law also must be reasonable for its judgment to pass muster. In its factual analysis, the majority made the following determination:

> [D]efendant's counsel in this case did not object to a new trial once the circuit court had declared a mistrial.

27

> Indeed, defendant's counsel in this case actually requested that the court set a date for a new trial and she participated, without objection, in the selection of a new trial date. Moreover, the record in this case clearly shows that during the first trial, defendant's counsel made clear and unequivocal objections to rulings of the circuit court that were adverse to her position. When she desired to object, she made specific objections. And, as we have already stated, she made no such objection to the court's declaration of a mistrial.

Washington v. Commonwealth 559 S.E.2d 636, 640 (Va. 2002).

This determination that Washington's counsel failed to object to the declaration of a mistrial is unreasonable in light of the record. Objections need not contain any particular talismanic phrase to be valid. Rather, they must "make known to the court the action the party desires the court to take or . . . the grounds therefor." Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 174 (1988). The same standard governs in Virginia, where "[f]ormal exceptions to rulings or orders of the court shall be unnecessary." Va. Code. Ann. § 8.01-384 (Michie 2000). The Virginia procedural rules further provide that "it shall be sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objections to the action of the court and his grounds therefor." Id.

It is true that Washington's counsel did not explicitly state the words "I object" in addressing the first Virginia trial judge's declaration of a mistrial. Her language, however, taken in the

28

context of the discussion, did make it clear to all relevant parties that she was contesting the issue of double jeopardy. Directly after the first Virginia trial judge first declared a mistrial due to the empaneling problem, counsel began to voice her objection. She stated, "[y]our honor, and I'm going to say this—." J.A. 54. Before she could finish her sentence, however, the court completed it for her, acknowledging "[n]ow you are going to have jeopardy." Id. (emphasis added). Washington's counsel then confirmed that this was indeed the point she intended to raise by repeating, "[w]e have jeopardy." Id. (emphasis added). Upon hearing this statement, the court then indicated that it was aware of its meaning. Significantly, rather than contesting counsel's claim that jeopardy existed, the court lamented to both parties that there was no way to fix this problem, declaring, "[t]he Commonwealth won't agree to the cure." Id. When the Commonwealth in response tried to suggest that double jeopardy concerns did not apply by stating that the jury panel had not yet been sworn, Washington's counsel again intervened. She noted, "[t]he jurors were sworn," emphasizing a point which would be the basis of any double jeopardy claim. J.A. 55. After that statement, the court once again indicated that it recognized the significance of Washington's counsel's point by acknowledging the impasse that the circumstances had created. The court exclaimed to both parties in frustration, "I tried to get this case tried, and tried to get it

29

done, but we are going to fight over this.  And you want your statutory right."  Id.

This brief colloquy alone strongly suggests that Washington's counsel did take the steps necessary to voice an objection. Specifically, before she "was cut off . . . by the judge, [Washington's] counsel began to articulate the argument" and "the judge's response suggests that he perceived the . . . argument." Beech v. Rainey Aircraft, 488 U.S. 153, 174 (1988).  But the transcript goes still further to demonstrate this point.  After this discussion, the court came to the conclusion that the lack of additional jurors required a mistrial, and it prepared to place the case on the docket for another day.  Instead of participating in this plan, counsel again engaged the court on the merits.  She stated, "[w]ell, I think there's really an argument about—." J.A. 55.  Once again, before she could finish, the court interrupted by completing her sentence.  It stated, "[n]ow she's going to claim that jeopardy attaches."  Id. (emphasis added).  And once again, Washington's counsel confirmed that this was indeed the point she intended to make, stating, "[w]ell, it did attach because the jurors were sworn."  Id. (emphasis added).  Counsel's persistence in re-raising her argument here, at the very moment that the court hoped that the parties would move on, is simply inconsistent with the idea that she was not objecting.  Moreover, if there were any remaining doubt as to this fact, the court itself quickly would

30

deliver the <u>coup de grâce</u>.  After insisting that jeopardy existed, Washington's counsel then offered to look at the transcript to confirm this point.  Recognizing her insistence, the court acknowledged exactly why Washington's counsel was remaining so firm on the issue.  It stated, "[n]ow she is <u>going to move to dismiss on double jeopardy grounds</u>."  <u>Id.</u> (emphasis added).  More than anything else, this admission indicates that the court was vividly aware that counsel was objecting and of the precise nature of her objection.

This exchange between the first Virginia trial judge and Washington's counsel also belies the Supreme Court of Virginia's finding that counsel "participated, without objection," in the setting of a new trial date.  Although Washington's counsel ultimately did confer with the court when it was setting a new trial date, she did so only after this extended colloquy when she expressed her objections.  Only after the court acknowledged that she was going to move to dismiss based on the Double Jeopardy Clause did she offer the brief statement "we can set a date." J.A. 56.  We note in passing that counsel's statement here does not unambiguously refer to a date for a new trial.  Even if counsel had been agreeing to set a new trial, however, it is understandable at that point why she would do so.  After Washington's counsel expressed her objection to the court, further protest could not have been useful or appropriate.  This fact is particularly true in

31

Virginia, where state procedural rules specifically protect a party from having to repeat objections that already have been raised. See Va. Code Ann. § 8.01-384(A) (Michie 2000) (providing that "[n]o party, after having made an objection or motion known to the court, shall be required to make such objection or motion again in order to preserve his right to appeal"). Moreover, directly after this exchange, the Virginia trial judge promptly made his ruling indelible by excusing the jury permanently. Because this act foreclosed any last possibility that Washington still could be tried by his original jury panel, further objection would have been totally moot. Thus, any subsequent involvement that Washington's counsel may have had in setting a trial date can hardly be considered evidence of waiver.

Moreover, the record makes it clear that even as the proceedings drew to a close in the trial, the first Virginia trial judge was still cognizant that Washington's counsel was objecting. First, after excusing the jury and giving its reasons for declaring a mistrial, the court again acknowledged the significance of the jury empaneling, stating, "[t]he jury was sworn. It is very important constitutionally." J.A. 59. Second, and equally important, the court acknowledged counsel's parting request that a transcript of the day's proceedings be prepared "fairly quickly." J.A. 60-61. This request only could have meant that Washington's counsel was not dropping the issue of double jeopardy. Indeed, the

32

only significant action that the Virginia trial judge performed in that day's proceedings was the granting of a mistrial. Therefore, Washington's counsel only would have needed the transcript for further argument on this very issue, and no other. For this reason, the court's acknowledgment, without further comment, of counsel's request is still further evidence that it was aware of her objection.

Although the preceding evidence already puts the fact that Washington's counsel objected beyond reproach, one further point is warranted. Beyond reviewing the plain meaning of the colloquies in the first trial, we may infer the meaning from the subsequent behavior of the parties. On this point as well, the record irrefutably demonstrates that no one left the original trial with the impression that Washington's counsel was consenting to the mistrial. Indeed, at Washington's subsequent trial, the second Virginia trial judge entertained an extensive argument regarding the mistrial, yet no one there claimed that Washington had consented or failed to object. At the beginning of the proceedings, Washington's counsel raised the issue, stating, "I did not request a mistrial. Mr. Hudgins did not request a mistrial. I think this is one of those cases where we would have to describe it as a su esponte [sic] declaration of a mistrial by the Court." J.A. 70. Neither the second Virginia trial judge nor the Commonwealth contested this claim. Rather, the entire basis of

33

argument before the court was the issue of manifest necessity for the mistrial. On this point, the second trial judge ultimately determined that "the whole issue here . . . [was] whether the [first trial judge] found this manifest necessity." J.A. 93 (emphasis added). It was not until the issue was appealed in the Virginia courts that the Commonwealth first made its claim that Washington had consented to the mistrial by his failure to object explicitly.

In sum, based on a plain reading of the record and the subsequent behavior of the parties, the Supreme Court of Virginia's factual determination that Washington had failed to object was unreasonable.

4.

The preceding analysis of the factual record does more than demonstrate that the Supreme Court of Virginia's factual determination was unreasonable. It also satisfies us that this factual determination, coupled with its unreasonable application of federal law discussed in Section III.B.2, supra, produced an unreasonable result. After reviewing the district court's analysis de novo, we agree that we must consider the issue of Washington's waiver based on the totality of the circumstances and mindful of the Supreme Court's directive to "indulge every reasonable presumption against waiver" of fundamental rights. Aetna Ins. Co.

34

v. Kennedy, 301 U.S. 389, 393 (1942). We also agree that the factual record unmistakably demonstrates that Washington's counsel made her objection known to the court. Applying these facts to the proper legal standard, we conclude that Washington undoubtedly asserted his double jeopardy rights, and it would be unreasonable to determine otherwise.[8] Accordingly, the trial court's declaration of a mistrial was improper unless there was manifest necessity for such a declaration. We turn to this final issue now.

C.

In its final claim, Appellant argues that even if Washington did not waive his double jeopardy rights, the district court erred in finding that there was no manifest necessity to support an independent declaration by the trial court of a mistrial.

This last claim is entirely without merit. As discussed in Section III.B.1, supra, under Supreme Court law, a finding of "manifest necessity" must be based on the totality of the circumstances. United States v. Sanford, 429 U.S. 14, 15-16 (1976). This clearly established standard generally requires an

---

[8]This determination is consistent not only with the position of the district court, but also with that of the Supreme Court of Virginia's dissenting opinion. Commonwealth v. Washington, 559 S.E.2d 636, 641–44 (Va. 2002). The dissent would have ruled that Washington did not consent to mistrial and that, because no manifest necessity existed, a second trial by the Virginia trial court was improper. The majority, because its ruling was premised on a finding of Washington's consent to mistrial, never considered the issue of whether manifest necessity existed for the mistrial.

35

investigation of whether less drastic alternatives to mistrial are available.  United States v. Shafer, 987 F.2d 1054, 1057 (4th Cir. 1993).  The presence of such alternatives, such as the continuance of the trial, precludes a finding that manifest necessity exists. See id. at 1058; United States v. Jorn, 400 U.S. 470, 487 (citing United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824)).  Here, the record clearly indicates that the original trial court did not consider a number of viable alternatives, including continuance, before making its ruling.  Rather, the court stated that there was only one alternative to declaring a mistrial, which it did not consider to be viable.  "The alternative [to mistrial], facing a double objection, each with a correct legal basis, was to try the case and see if it got in and done by 6 o'clock tonight."  J.A. 58. In failing to consider alternatives other than attempting to complete the case quickly, the trial court erred.

We find that based on the record, the less drastic alternative of a continuance would have been available.  The record indicates that one sworn juror was unavailable after 5:30 P.M. on the first day and another sworn juror was unavailable for the entire second day.  It also indicates that the trial would likely last longer than 5:30 P.M. on the first day and that an inadequate number of veniremen existed for the selection of an alternate juror.  Based on these constraints, which are the only ones in the record, the

36

court easily could have postponed the trial until all of the sworn jurors were available to proceed.

Furthermore, the court had the option of reevaluating whether it would be proper to excuse the two jurors who claimed to have conflicting obligations. One of these jurors had "a final class of a graduate seminar" that evening at 6:00 P.M. J.A. 43-44. There is no explanation for why the other juror was to be excused for the following day entirely. J.A. 13. Despite this fact, the first Virginia trial court did not even consider scrutinizing their excuses to determine whether it still would be proper to excuse them based upon the circumstances. While a trial court is always free to attempt to accommodate jurors and prevent them from suffering undue hardship as a result of their jury service, Blakey v. Commonwealth, 29 S.E.2d 863, 865 (Va. 1944), the decision to excuse jurors is generally a matter of discretion with the court. See Va. Code Ann. § 8.01-341.2 (Michie 2000) ("The court, on its own motion, may exempt any person from jury service . . . if serving on a jury . . . would cause such person a particular occupational inconvenience."); Weeks v. Commonwealth, 450 S.E.2d 379, 389 (Va. 1994) (granting deference to the trial court's decision of whether to exclude or retain a prospective juror). Therefore, despite these jurors' expectations that they would be excused (apparently based on assurances before the trial), the first Virginia trial court was free to determine that it was no

37

longer acceptable to excuse them due to the empaneling problem. In failing to consider at least scrutinizing the jurors' justifications to determine if they were sufficient, the first Virginia trial court missed another opportunity to consider a "viable alternative" to mistrial.

Based on the foregoing, we cannot say that "the trial judge acted responsibly and deliberately, and accorded careful consideration to respondent's interest in having the trial concluded in a single proceeding." Arizona v. Washington, 434 U.S. 497, 506 (1978). For this reason, we agree with the district court that, based on the record, manifest necessity did not exist for the declaration of a mistrial. Accordingly, Appellant's final claim also must fail.

IV.

In light of the foregoing analysis, we find both that Washington did not consent to the mistrial and that there was no manifest necessity for the first Virginia trial court independently to declare a mistrial. Because there was no valid basis for the first Virginia trial judge's sua sponte declaration of a mistrial, Washington was entitled to the fundamental protections attendant upon the Double Jeopardy Clause. Further, in light of the factual record, we believe that this conclusion is inescapable. Although we are mindful not to simply substitute our opinion for that of a

38

state court, we believe that it would be unreasonable for any court, including the Supreme Court of Virginia, to conclude otherwise. Such a conclusion would lie "well beyond the boundaries of permissible differences of opinion." <u>Hardaway v. Young</u>, 302, F.3d 757, 762 (7th Cir. 2002), <u>cert. denied</u>, 538 U.S. 979 (2003).

Based on this analysis, we agree with the district court that habeas relief is proper. Accordingly, we affirm the grant of a writ of habeas corpus by the district court.

<u>AFFIRMED</u>

SHEDD, Circuit Judge, concurring in part and dissenting in part:

The Supreme Court of Virginia found that Washington implicitly consented to the first state trial court's declaration of a mistrial by failing to object to the mistrial, and it therefore held that his second trial did not violate his right under the Double Jeopardy Clause of the Fifth Amendment. Commonwealth v. Washington, 559 S.E.2d 636 (Va. 2002). In affirming the district court's grant of a writ of habeas corpus, the majority holds that the Virginia supreme court's decision is based on both an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

This is a somewhat unusual case which could have been handled better by the first trial judge and trial counsel. Moreover, as is evident from the split opinion of the Virginia supreme court, the state-court resolution could easily have been in Washington's favor. However, our task is to apply the "highly deferential" standard of review mandated by 28 U.S.C. § 2254(d), "which demands that state-court decisions be given the benefit of the doubt," Bell v. Cone, 125 S. Ct. 847, 853 (2005) (per curiam) (internal quotation marks omitted), and which authorizes our intervention into a state criminal proceeding "only when a state-court decision is objectively unreasonable," Woodford v. Visciotti, 537 U.S. 19,

27 (2002) (per curiam). Viewing the case in this light, I disagree with both of the majority's holdings.

In my view, the Virginia supreme court's application of federal law is not objectively unreasonable. Compare Washington, 559 S.E.2d at 639-40 (stating that "[t]he various United States Courts of Appeals have held that a defendant's consent to a mistrial is implied when a defendant had an opportunity to object to a mistrial but failed to do so" and applying this rule) with United States v. Ham, 58 F.3d 78, 83-84 (4th Cir. 1995) (stating that "a number of circuits have held that a defendant impliedly consents to a mistrial if the defendant had an opportunity to object to the mistrial but fails to do so" and applying this rule). Although the majority places great reliance on its view that the Virginia supreme court did not consider the "totality of the circumstances," I believe that (to the extent such consideration is necessary) the majority misreads the Virginia supreme court's opinion. A fair reading of that opinion shows that the Virginia supreme court did, in fact, properly consider the circumstances of the case. See Washington, 559 S.E.2d at 637-38 (statement of the operative facts); id. at 639 (noting the state-law requirements for objecting in Virginia trial courts); id. (noting counsel's admitted failure to expressly object and that Washington "does not contend that he was deprived of an opportunity to make a meaningful objection"); id. at 640 (comparing counsel's "clear and unequivocal

41

objections" to other rulings in the case with her lack of such an objection to the mistrial).

I also believe that the Virginia supreme court's factual determinations, which are presumptively correct, see 28 U.S.C. § 2254(e)(1), are not objectively unreasonable. The key factual issue is not whether Washington's counsel raised the issue of double jeopardy while the mistrial was being considered: she clearly did. Rather, the key issue is whether she objected to the mistrial -- that is whether she informed the trial judge that Washington wished to proceed with the trial. She clearly did not. See, e.g., Ham, 58 F.3d at 84 ("If Swami had wanted the original jury to decide the Rule 31(e) forfeiture issue, he should have informed the court of this desire before it dismissed the jury."). The importance of this distinction is illustrated by the majority's criticism of the trial judge (and its corresponding finding regarding manifest necessity) for failing to consider alternatives to the mistrial. Had counsel informed the trial judge that Washington wanted to proceed with that jury, the trial judge presumably would have explored other alternatives. However, counsel did not press the issue of proceeding with the trial, and the trial judge therefore did not conduct an extended analysis of alternatives to the mistrial.

42

Because the Virginia supreme court's decision is not objectively unreasonable, I would reverse the district court's grant of habeas relief.*

---

*The majority also holds that the composition of this appellate panel is not unconstitutional and that consideration of Washington's double jeopardy claim is not precluded by an adequate and independent state procedural bar. I concur in these results.

43