NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0122n.06

No. 14-1039

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 10, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DOUGLAS EUGENE CAMP, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MARY BERGHUIS, Warden, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:    BATCHELDER and KETHLEDGE, Circuit Judges; COLLIER, District Judge.[*]

**ALICE M. BATCHELDER, Circuit Judge.**   In 2007, a Lenawee County, Michigan grand jury indicted Douglas Camp for fifteen counts of criminal sexual conduct stemming from the alleged sexual abuse of his twelve-year-old adopted nephew. In a separate case in Livingston County, Michigan, a jury had acquitted Camp of six charges of criminal sexual conduct arising from unrelated conduct but concerning the same nephew and the nephew's eleven-year-old foster brother. During the Lenawee County trial, the prosecution's first witness mentioned the trial in Livingston County. Defense counsel immediately requested a bench conference in order to discuss granting a mistrial. After a short colloquy, the trial judge granted a mistrial. In a new trial, a jury found Camp guilty of one count of criminal sexual conduct. On appeal, the Michigan

---

[*]The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

Supreme Court affirmed the conviction, holding that Camp had consented to the mistrial and thus the new trial did not violate the double jeopardy prohibition of the Fifth Amendment. Camp filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254; the district court denied relief but granted a certificate of appealability as to the double-jeopardy claim. For the reasons that follow, we AFFIRM the judgment of the district court.

## I.

The Court of Appeals of Michigan accurately summarized the relevant facts underlying Camp's petition:

> Defendant was charged with ten counts of first-degree criminal sexual conduct (CSC I) and five counts of CSC II. The victim of the 14 charges was defendant's 12-year-old adopted nephew, AK. The sexual abuse occurred during a camping trip in Lenawee County. In a separate case in Livingston County, defendant was charged with four counts of CSC I and two counts of CSC II. The victims of these 6 charges were AK and AK's 11-year-old foster brother, SH. The Livingston County case proceeded to trial, and a jury acquitted defendant of the six charges.
>
> The present case then went to trial before a jury. The first witness was Tammie Kurth, AK's adopted mother and defendant's sister. She testified that one evening, a few months after defendant's and AK's camping trip, she discovered AK and SH, in their bedroom, naked from the waist down, "messin' around." Kurth sent her husband to speak to AK and SH, and AK disclosed that he had learned the behavior from defendant. Kurth drove to defendant's house, where she "asked him what he'd been doin' to [her] boys." Defendant denied doing anything improper, but Kurth kept telling defendant "that they [AK and SH] said he had been molesting them."
>
> Kurth testified that, after reporting the abuse to SH's guardian ad litum, she contacted a lawyer. The lawyer took her, along with AK and SH, to the local police department. The prosecutor then asked Kurth, "After a police report had been made, what, if anything happened?" Kurth replied, "Well, it eventually went to trial in Livingston County. I don't—."

*People v. Camp*, No. 285101, 2009 WL 2974772, at *1 (Mich. Ct. App. Sept. 17, 2009).

Upon hearing Kurth's statement about the Livingston County trial, defense counsel petitioned the judge to be heard outside the presence of the jury because "I'm [sic] wanna move for a mistrial" or, as an alternative, "we can announce to the jury and you can let me introduce

the not guilty verdict." The trial judge sent the jury back to the jury room, took a recess, and reconvened proceedings outside the presence of the jury. The bench conference began with the trial judge asking defense counsel what he wanted since he "made the objection." Defense counsel requested that the judge admit a certified copy of the not guilty verdict in the Livingston County case or, in the alternative, grant a mistrial "if the Court's not inclined to grant that request." Allowed to respond, the prosecutor argued that Kurth's statement was not responsive to her question and moved for a mistrial of her own. The trial judge immediately denied the prosecution's motion for a mistrial.

The trial judge gave defense counsel the "last voice" on the issue. Defense counsel asked the court to "allow the admission of the verdict as to the complainants in that case, or in the alternative a dismissal . . . of all the charges in both cases" because "we can't unring that bell." The trial judge agreed that the bell could not be unrung and concluded: "These charges are very serious. I think that we should have a clean trial. I'm going to grant a mistrial." Defense counsel never objected to the grant of a mistrial.

Rather than appeal the decision, defense counsel waited until the judge had scheduled the new trial and then filed a motion to dismiss based on double jeopardy. At a hearing concerning the motion to dismiss, defense counsel took exception to the prosecution's claim that the defense had consented to the mistrial, noting that what he had really wanted was what he requested just before the judge declared a mistrial—the not-guilty verdict admitted into evidence or the charges dropped. Regardless, the trial judge denied the motion to dismiss, holding both that the defense had consented to the mistrial and that manifest necessity required the mistrial. At the conclusion of the new trial, a new jury convicted Camp of one count of criminal sexual conduct in the

second degree. The trial judge sentenced Camp to fifty-seven months to fifteen years' imprisonment.

After his conviction, Camp appealed to the Court of Appeals of Michigan, arguing, *inter alia*, that the second trial violated the Double Jeopardy Clause because jeopardy had attached when the initial jury was sworn and he had not consented to the mistrial. The Court of Appeals reversed Camp's conviction, finding that he had not consented to the mistrial and the prosecutor had not shown a manifest necessity for the mistrial. *Camp*, 2009 WL 2974772 at *1. The Michigan Supreme Court reversed in a paragraph-long order. *People v. Camp*, 781 N.W.2d 803 (Mich. 2010). The court reasoned that "the trial court did not clearly err in finding that the defendant consented to the mistrial declared by the court" and "[w]here a defendant consents to a mistrial, double jeopardy considerations do not apply." *Id.* at 803 (citing *United States v. Dinitz*, 424 U.S. 600, 607 (1976)).

On remand, the Court of Appeals of Michigan considered several substantive issues raised but not decided in Camp's original appeal. The court denied relief on all of those issues, which are not relevant for this case. *People v. Camp*, No. 285101, 2010 WL 3238924, at *1 (Mich. Ct. App. Aug. 17, 2010). The Michigan Supreme Court denied Camp's application for leave to appeal. *People v. Camp*, 794 N.W.2d 41, 41 (Mich. 2011).

Camp filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254. He raised claims concerning the Double Jeopardy Clause, the Confrontation Clause and ineffective assistance of counsel. The district court rejected all of his claims, but granted a certificate of appealability on Camp's double-jeopardy claim. Camp appealed on the double-jeopardy issue.

**II.**

The district court held that "the Michigan Supreme Court's conclusion that Petitioner consented to the mistrial was a reasonable determination of the facts and a reasonable application of the law" because defense counsel had requested a mistrial twice and did not object to the mistrial once the trial court granted one. The standard of review, however, is even less stringent: we do not need to determine that the Michigan Supreme Court's determination was reasonable in order to deny habeas relief; instead, we must simply find that it was not unreasonable. *See O'Neal v. Bagley*, 743 F.3d 1010, 1019–20 (6th Cir. 2013). We hold that the Michigan Supreme Court's determination that Camp consented to the mistrial is not unreasonable.

**A.**

This court reviews de novo a district court's legal conclusions and mixed questions of law and fact, and reviews its factual findings for clear error. *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court may not grant a habeas petition with respect to any claim that was adjudicated on the merits in the state courts unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court reaches a decision different from that of the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but

unreasonably applies that principle to the facts of the petitioner's case. *Id.* "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous"; it must have been "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (internal quotation marks omitted). For factual matters, a district court may not grant a habeas petition unless the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

To obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This standard, the Supreme Court recently reminded this circuit, is "difficult to meet." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013)) (internal quotation marks omitted).

**B.**

The Constitution prohibits any person from being subject "for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Jeopardy attaches when a jury panel is seated and sworn. *Crist v. Bretz*, 437 U.S. 28, 38 (1978). "Once jeopardy attaches, prosecution of a defendant before a jury other than the original jury . . . is barred unless (1) there is a 'manifest necessity' for a mistrial or (2) the defendant either requests or consents to a mistrial." *Watkins v. Kassulke*, 90 F.3d 138, 141 (6th Cir. 1996).

Camp contends that the Michigan Supreme Court's holding that he consented to the mistrial was an unreasonable determination of the facts and an unreasonable application of *Dinitz.* In that case, the Court noted that "whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on whether there is a manifest necessity for the (mistrial) or the ends of public justice would otherwise be defeated." 424 U.S. at 606–07 (internal quotation marks omitted). "Different considerations obtain, however, when the mistrial has been declared at the defendant's request." *Id.* at 607. When a defendant must determine whether or not to request or consent to a mistrial in response to judicial or prosecutorial error, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." *Id.* at 609.

"[T]he United States Supreme Court has always required that consent to mistrial must be determined based on a 'totality of the circumstances.'" *Washington v. Jarvis*, 137 F. App'x 543, 554 (4th Cir. 2005); *see also id.* at 552 (citing *United States v. Sanford*, 429 U.S. 14, 16 (1976)); *United States v. Gantley*, 172 F.3d 422, 428–29 (6th Cir. 1999) ("[T]his circuit simply insists on an especially careful examination of the totality of circumstances, to ensure a defendant's consent is not implied when there is a substantial question of whether the defendant did, in fact, consent.").

Reasonable jurists—namely, this court and our sister circuits—have found two actions by a defendant significant in assessing implied consent. First, courts have highlighted the defendant's choice to make a motion for a mistrial and not withdraw it before the trial judge's granting of a mistrial. *See Tinsley v. Million*, 399 F.3d 796, 812 (6th Cir. 2005); *Earnest v. Dorsey*, 87 F.3d 1123, 1129 (10th Cir. 1996); *United States v. Goldstein*, 479 F.2d 1061, 1067

(2d Cir. 1973). Second, courts have emphasized that a failure to object to the mistrial once granted, while not dispositive, can contribute to implied consent. *See Gantley*, 172 F.3d at 429; *Washington*, 137 F. App'x at 552.

Camp argues that by citing to *Dinitz* but failing to recognize that Camp did not maintain primary control over the course to be followed the Michigan Supreme Court both unreasonably determined that he had consented to the mistrial and unreasonably applied clearly established Federal law. For support, he highlights defense counsel's final request—that the not-guilty verdict be admitted or, in the alternative, that all charges be dropped—and notes that it did not include granting a mistrial as an option. He ignores, however, that defense counsel initially moved for a mistrial, reiterated his request one more time during the bench conference, never withdrew the motion, and never objected to the mistrial once granted. Camp's situation thus evinces both of the factors reasonable jurists have found significant to implied consent. Accordingly, we hold that the Michigan Supreme Court was not objectively unreasonable when it determined that, under the totality of the circumstances, Camp consented to the mistrial and thus retained primary control over the course to be followed once the prosecutorial error became apparent, and that the granting of a new trial comported with the requirements of the Double Jeopardy Clause.

Finally, Camp argues that the Michigan Supreme Court disregarded clearly established law by reviewing the trial court's consent finding for clear error. But neither *Dinitz* nor any other Supreme Court decision says that appellate courts must review such a finding de novo. Thus, the district court properly denied Camp's habeas petition.

**III.**

For the foregoing reasons, we AFFIRM the district court's denial of habeas relief on Camp's double-jeopardy claim.